Marcy M. ROWAN, Plaintiff–Appellee,

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant– Appellant.**

No. 96–5918.

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1997.

Decided July 16, 1997.

John D. Schwalb (argued and briefed), Brewer, Krause, Brooks & Mills, Nashville, TN, for Plaintiff–Appellee.

W. Kyle Carpenter (argued), Tony R. Dalton (briefed), Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for Defendant– Appellant.

Before: MERRITT, RYAN, and HILL,* Circuit Judges.

MERRITT, J., delivered the opinion of the court, in which RYAN, J., joined. HILL, J. (p. 438), delivered a separate concurring opinion.

## OPINION

MERRITT, Circuit Judge.

The plaintiff in this ERISA action challenges the discontinuation of her long-term disability insurance benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). The district court granted summary judgment for the plaintiff. We find, however, that there are disputed issues of material fact regarding whether or not the plaintiff meets the policy's definition of disability and whether she was under the regular attendance of a physician, as required to receive benefits under the group

---

* The Honorable James C. Hill, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

insurance policy. Therefore, we REVERSE and REMAND for further proceedings.

## I. FACTS

Plaintiff Marcy Rowan was injured in an automobile accident in July 1991. Prior to and for a few months after the accident, the plaintiff was an executive vice president for FISI–Madison International. The plaintiff's work consisted primarily of traveling and conducting seminars throughout the United States. She stopped working in October 1991 due to severe back and leg pain. In February 1992 she was diagnosed with lumbar disc herniation and underwent back surgery. She submitted a disability insurance claim to the defendant, from whom her employer had purchased a group long-term disability insurance policy. The defendant approved the claim and paid long-term disability benefits until April 1995. The defendant terminated benefits at that point, based on its conclusions that the plaintiff was no longer disabled and that she was not under the regular attendance of a physician because she had not been treated by a physician in over eleven months.

The benefits section of the disability insurance policy provides:

When the Company receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit.... The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:

1. disability; and

2. regular attendance of a physician.

The proof must be given upon request and at the insured's expense.

A later subsection of the benefits section titled "TERMINATION OF DISABILITY BENEFITS" provides:

Disability benefits will cease on the earliest of:

1. the date the insured is no longer disabled;

2. the date the insured dies;

3. the end of the maximum benefit period;

4. the date the insured's current earnings exceed 80% of his indexed predisability earnings.

The policy defines "disabled" as follows:

"Disability" and "disabled" mean that because of injury or sickness:

1. the insured cannot perform each of the material duties of his regular occupation; or

2. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:

a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and

b. earning currently at least 20% less per month than his indexed predisability earnings due to that same injury or sickness.

According to a job analysis form that the plaintiff's former employer completed, the plaintiff's job required five hours per week preparing speeches, seventeen and one half hours of on-site preparation, ten hours of travel, seven and one half hours coordinating efforts with other company representatives, and ten hours speaking at conferences, training meetings and conventions. According to the employer, in an eight-hour work day, the plaintiff's job required her to sit two to five hours, stand two to six hours continuously, walk two to three hours with breaks, and lift and carry luggage and materials two to three hours with breaks. The employer reported that in an eight-hour workday, the plaintiff would lift or carry up to twenty pounds up to thirty-three per cent of the time, but would not lift or carry more than twenty pounds. The plaintiff, however, has submitted an affidavit stating that her job required her to travel for periods of a week at a time. As a result she stated that she was required to carry a suitcase that routinely weighed between thirty and fifty pounds, a garment bag that routinely weighed between thirty and forty pounds, and seminar materials weighing forty pounds or more.

In April 1992, the plaintiff's physician, Dr. Howell, completed a physical capacities evaluation form indicating that the plaintiff could sit for up to two hours, stand for up to one hour, walk for up to two hours, and lift up to ten pounds. In an independent medical examination conducted at the defendant's request in August 1993, Dr. Lamb concluded that the plaintiff would have "significant restrictions" in her ability to bend, squat, twist, or lift more than twenty-five pounds and would be unable to perform the tasks that the plaintiff described as being encompassed within her former job duties.

In January 1995, a physician employed by the defendant conducted a review of the plaintiff's file and concluded that she should be able to return to her former work, since Dr. Lamb reported that the plaintiff could lift up to twenty-five pounds and the plaintiff's employer reported that her job did not require lifting more than twenty pounds. In March 1995, the defendant requested updated medical records from the plaintiff. The plaintiff responded that she was not seeing any physician because she was trying to remain treatment-free for one year in order to qualify for health insurance without a pre-existing back condition. The plaintiff's last visit with her treating physician had been in March 1994. At that time, her physician indicated that she was to be seen again in three months.

The defendant conducted surveillance of the plaintiff in March and April 1995 and videotaped her engaging in various activities including walking her dog, sitting at the beach, driving, bending deeply from the waist, and lifting and carrying various small objects. In April 1995, the defendant terminated the plaintiff's disability benefits on the basis of her current activity level and the fact that she had not seen her doctor in over eleven months.

The district court granted summary judgment to the plaintiff, finding that all of the medical evidence indicated that the plaintiff could not lift more than twenty-five pounds and that an average suitcase weighs more than that. The district court dealt with the defendant's claim that the plaintiff had not been under the regular attendance of a physician in summary fashion, stating only that "the policy's definition of disability does not require a specific regimen of doctor's care."

## II. ANALYSIS

*A. Standard of Review of ERISA Plan Administrators' Factual Determinations*

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that plan administrators' interpretations of plan terms are subject to *de novo* review unless a plan gives the administrator discretionary authority to interpret the plan terms. The defendant concedes that the plan at issue does not confer discretionary authority on the plan administrator with respect to either interpretation of plan terms or factual findings. Relying on the Fifth Circuit's opinion in *Pierre v. Connecticut General Life Insurance Co.*, 932 F.2d 1552 (5th Cir.1991), however, the defendant argues that *Firestone* does not explicitly apply to a plan administrator's factual determinations and that such determinations should be reviewed under an abuse of discretion standard.

■ Several other circuits, as well as an earlier panel of this Circuit, have rejected the defendant's argument and concluded that factual determinations by plan administrators are subject to *de novo* review. *See Perez v. Aetna Life Insurance Co.*, 96 F.3d 813 (6th Cir.1996), *vacated for rehearing en banc*, 106 F.3d 146 (6th Cir.1997); *Ramsey v. Hercules Inc.*, 77 F.3d 199 (7th Cir.1996); *Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176 (3d Cir.1991); *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210 (4th Cir. 1990). Although the Sixth Circuit has vacated the *Perez* opinion and granted *en banc* review of that case on a different ERISA issue, we find the *Perez* court's analysis of this issue to be compelling. We thus join every other circuit that has considered this issue in rejecting *Pierre*. We hold that factual determinations of plan administrators in actions brought under 29 U.S.C. § 1132(a)(1)(B) are subject to *de novo* review.

In *Bruch*, the Supreme Court expressly limited its discussion to the issue of "the appropriate standard of review in [29 U.S.C.] § 1132(a)(1)(B) actions challenging denials of benefits based on *plan interpretations."* *Bruch*, 489 U.S. at 108, 109 S.Ct. at 953 (emphasis added). Thus, the Court, arguably, left open the question of the appropriate standard of review of factual determinations by plan administrators. *But see Luby*, 944 F.2d at 1183 (finding that the Supreme Court's limitation of its holding was intended only to distinguish actions pursuant to § 1132(a)(1)(B) from actions brought under other sections of ERISA). In *Pierre*, the Fifth Circuit correctly looked to principles of trust law to answer this question, *see Bruch*, 489 U.S. at 111, 109 S.Ct. at 954–55, but applied those principles incorrectly.

The *Pierre* court based its holding primarily on sections 186(b) and 187 of the Restatement (Second) of Trusts (1959). Section 187 provides: "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." The court found that discretion over fact-finding is conferred by section 186(b), which states that "the trustee can properly exercise such powers and only such powers as ... are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust." The court argued that passing on issues of fact is "necessary or appropriate" to determine individual eligibility for plan benefits, and thus is necessarily within the discretion of the plan administrator. *Pierre*, 932 F.2d at 1558. The problem with this argument is that it applies with equal force to interpretation of plan language. As the *Pierre* court, itself, noted, the benefits eligibility determinations that plan administrators routinely make require administrators to determine both the facts underlying claims and whether those facts entitle claimants to benefits under the terms of the plan. *Id.* at 1557. The Restatement language on which the Fifth Circuit relied does not provide any basis for distinguishing between court review of factual determinations and review of interpretations of claim language. Nor have courts reviewing the actions of trustees made such a distinction. *See Ramsey*, 77 F.3d at 203.

The *Pierre* court also relied on the deference that courts accord to fact finding by administrative bodies and that appellate courts accord to district court factual determinations due to the difficulty and uncertainty involved in reviewing a "cold record." *Pierre*, 932 F.2d at 1558. As the *Perez* court found, however, "[d]eferring under these circumstances is very different than deferring to a plan administrator, who will be one party to a private dispute.... The reason for treating the two situations differently is obviously that one party to a contract has an incentive to find facts not in a neutral fashion, but in the manner that is most advantageous to its own interests." *Perez*, 96 F.3d at 824. As a result, deferring to the factual findings of a plan administrator when the plan language does not vest fact-finding authority in the administrator would "afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Bruch*, 489 U.S. at 114, 109 S.Ct. at 956.

The *Pierre* court's policy argument that failure to defer to plan administrators' factual findings will lead to a flood of litigation is also unpersuasive. The *de novo* standard of review applies only when the plan does not explicitly vest fact-finding discretion in the plan administrator. Thus, drafters of ERISA plans can avoid *de novo* review of plan administrators' factual determinations in this context by careful drafting or re-drafting of ERISA plans. *See Ramsey*, 77 F.3d at 205.

### B. The Plaintiff's Disability Status

■ Summary judgment is only appropriate when there are no disputed issues as to any material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). The district court was presented with substantial factual disputes as to both the plaintiff's physical abilities and the requirements of her job. With respect to the plaintiff's physical condition, although the plaintiff claims that she is unable to sit, stand, and walk for the periods of time re-

quired by her job, the defendant has introduced a surveillance videotape showing the plaintiff engaging in a wide range of activities, including driving, sitting and walking for prolonged periods of time. Although not determinative, the videotape creates questions of fact about the plaintiff's activity level that should not have been resolved on summary judgment. Similarly, there is conflicting evidence regarding how much weight the plaintiff can lift and carry. Although Dr. Howell initially reported that the plaintiff should not lift more than ten pounds, Dr. Lamb reported that the plaintiff could lift up to twenty-five pounds.

The factual disputes are particularly pronounced with respect to the plaintiff's job requirements. Although the defendant has submitted an affidavit stating that her job required her to carry luggage and materials with a total weight of up to 130 pounds, the defendant has submitted evidence from the plaintiff's employer that her job did not require her to lift or carry more than twenty pounds. The defendant has thus introduced credible evidence that the plaintiff is able to lift up to twenty-five pounds but that her job only required her to lift twenty pounds. This evidence creates a substantial question of fact that should not have been resolved on summary judgment.

Although the district court's resolution of these issues must be based solely on the administrative record, *see Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368 (6th Cir.1994); *Perry v. Simplicity Eng'g*, 900 F.2d 963 (6th Cir.1990), remand is required to allow the parties to fully develop their arguments regarding the proper resolution of these factual disputes. The district court should then determine whether the factual determinations of the plan administrator were correct or incorrect.

*C. Regular Attendance of a Physician*

The court below failed to give adequate consideration to the policy requirement that the claimant receive the "regular attendance of a physician." Although it is true, as the district court found, that "the policy's definition of disability does not require a specific regimen of doctor's care," the policy clearly requires some level of medical treatment in order to continue to receive benefits. The

fact that the plaintiff did not have contact with a physician with respect to her back condition for over eleven months prior to the termination of her benefits is sufficient to raise a question of fact as to whether or not she was under the regular attendance of a physician during that time—particularly since her treating physician recommended at her last office visit that she return in three months. *See Texas Reserve Life Ins. Co. v. Lothringer*, 394 S.W.2d 660 (Tex.Civ.App. 1965) (finding that the claimant was not under the regular attendance of a physician when the claimant had not been seen by a physician for fifteen months and there was no evidence that the "insured had reached a maximum recovery from the injury with disability for which further care and attention by a physician would be useless"); *Redden v. Constitution Life Ins. Co.*, 113 Ohio App. 202, 166 N.E.2d 410 (1960) (claimant that had not seen a doctor for eleven months was not under the regular attendance of a physician), *aff'd on other grounds*, 172 Ohio St. 20, 173 N.E.2d 365 (1961). Although these facts are not necessarily determinative, they are, at a minimum, sufficient to warrant serious review by the district court. Other relevant factors, to the extent they are revealed by the administrative record, may include the plaintiff's condition at the time of her last doctor's visit, the likelihood that additional doctor visits would have influenced the progression of her disability, whether or not the plaintiff was taking medication or engaging in physical therapy or exercises recommended by her doctor, and the need for a physician to directly monitor such activities in the normal course of treatment.

The plaintiff's argument that the policy is ambiguous as to whether the regular attendance of a physician is required is without merit. Although it is true that this requirement is not included in either the definition of disability or the subsection setting forth the criteria for termination of eligibility, the requirement is clearly and unambiguously stated at the start of the benefits section— which includes the termination sub-section. The statement in the termination section that "benefits will cease on the earliest of" the dates listed in that subsection does not literally preclude cessation at an earlier date when the claimant fails to provide the re-

quired proof of disability or regular attendance of a physician. Read as a whole, the policy is neither unclear nor misleading and cannot reasonably be read not to require the regular attendance of a physician.

### III. CONCLUSION

Because there are disputed issues of material fact regarding the plaintiff's physical abilities, the requirements of her former work, and whether or not she was under the regular attendance of a physician, summary judgment is not appropriate. We therefore REVERSE and REMAND for further proceedings.

HILL, Circuit Judge, specially concurring.

I am informed by my colleagues on the panel that this court's *en banc* reconsideration of *Perez* did not include review of the *Perez* holding regarding the proper standard of appellate review of a plan administrator's factual findings. In view of *Perez*, therefore, I join the opinion today. My concurrence is premised upon the binding precedent of *Perez* in this circuit and I need not join in so much of the opinion as evaluates the reasoning of *Perez* as being superior to that of the Fifth Circuit's in *Pierre*.

Accordingly, I CONCUR.