**Lloyd G. THOMAS, Plaintiff,**

v.

**LOCKHEED MARTIN INFORMATION SYSTEMS and Life Insurance Company of North America, subsidiary of Cigna Corporation, Defendants.**

**No. 3:99CV393/RV/SMN.**

United States District Court,
N.D. Florida,
Pensacola Division.

March 26, 2001.

Judgment does not change the result, the Motion to Strike is due to be denied as moot.

Stephanie Ann Taylor, McKenzie & Soloway, Pensacola, FL, for Lloyd G. Thomas, plaintiff.

Paul R. Ezatoff, Christopher Brian Lunny, Katz, Kutter, Haigler, etc., Tallahassee, FL, Ralph Colby Losey, Alan Harrison Brents, Katz, Kutter, Haigler, etc., Orlando, FL, for Lockheed Martin Information Systems, Life Insurance Company of North America, a subsidiary of Cigna Corporation, defendants.

### ORDER

VINSON, Chief Judge.

The parties have agreed to submit this case to the Court on their cross motions for summary judgment (docs. 44, 53).

In this action, plaintiff Lloyd G. Thomas seeks review of the denial of his application for long term disability ("LTD") benefits under an employee benefit plan established by defendant Lockheed Martin Information Systems ("Lockheed Martin")

and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*. Additionally, plaintiff has a state law claim for breach of contract for the denial of his application for short term disability ("STD") benefits under a Salary Continuation Agreement with Lockheed Martin. Both of the contested benefit plans are administered by defendant Life Insurance Company of North America ("LINA"). However, LINA only insures and funds the LTD benefits. The STD benefits at issue are funded entirely by Lockheed Martin and paid from its general assets. ERISA governs and controls the LTD benefits claim, while the STD benefits are governed by state contract law. The LTD plan granted LINA discretion in making eligibility determinations. All parties have stipulated that the material facts are not in dispute and that the case can be decided on a summary judgment basis without trial. Therefore, I incorporate by reference the facts as set forth in the parties' joint stipulation (doc. 20), which is attached as an addendum to this order.[1] Except as noted, the material facts discussed in this order are not in dispute.

In their cross motions for summary judgment, the parties' have requested that I resolve the following four issues: first, with respect to his claim for STD benefits (Count II), is whether Thomas's psychiatric disorder was so severe at the time his active service with Lockheed Martin terminated on March 17, 1998, that he was "unable to perform each and every material duty of his or her regular occupation;"[2]

second, with respect to Thomas's claim for LTD benefits (Count I), whether the arbitrary and capricious standard of review should be heightened under the "insurer conflict rule" of *Brown v. Blue Cross & Blue Shield,* 898 F.2d 1556 (11th Cir.1990); third, whether the administrative record shows that LINA's denial of the LTD benefits claim was an abuse of discretion under the arbitrary and capricious standard, which may or may not be heightened under the insurer conflict rule; and fourth, whether the Court should exercise its discretion under ERISA to award attorney fees to any party and the reasonable amount of any such award.

## DISCUSSION

### A. *Summary Judgment Standard.*

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273

1. The parties' joint stipulation mistakenly identifies the Lockheed Martin facility at which Thomas worked as being in Pensacola, Florida. The office actually was in Panama City, Florida.

2. The parties joint stipulation raises two additional issues with respect to Thomas's claim for STD benefits: (1) whether the Court

should exercise its discretion and award Thomas attorney fees and (2) whether any medical expenses incurred by Thomas were proximately caused by the denial of STD benefits. Because neither party has addressed these issues in their respective motions for summary judgment, these requests by the plaintiff are denied.

(1986); *see also Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996).

However, summary judgment is improper "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See id.; see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir.2000); *Ramsey v. Leath*, 706 F.2d 1166, 1170 (11th Cir.1983). On the other hand, if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party, then the issue of fact is genuine. *See Matsushita Elec. Indus. Co., supra*, 475 U.S. at 586, 106 S.Ct. at 1356. On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the nonmoving party. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir.1999).

**B. *Issue One: LINA's Denial of Thomas's STD Claim (Count II).***

■ The breach of contract claim for STD benefits alleged in Count II raises the issue of whether Thomas's psychiatric disorder was so severe as of the time that his active service with Lockheed Martin terminated (on March 17, 1998) that he was unable to perform each and every material duty of his regular occupation. The parties agree that I am to review this claim *de novo*, and that I may consider evidence outside of the administrative record because Count II asserts a state law breach of contract claim for which this Court sits as the finder of fact. The evidence outside of the administrative record primarily includes a pending discrimination action filed by Thomas against Lockheed Martin; a disability determination by the Social Security Administration ("SSA"); the expert testimony and reports of Dr.s Augustine Joseph, Mohammad Latif, James Oenbrink, and Neda Koeheman; and the expert testimony and report of Dr. John Blankemeier. Much of the post-March 1998 medical evidence deals with physical (not mental) problems experienced by Thomas, which is generally not relevant or material to the issues before me.

The pivotal date in this case is March 17, 1998, because this is the date on which Thomas stopped working for Lockheed Martin. Therefore, in reviewing LINA's decision to deny Thomas's claim for STD benefits, I must consider the evidence as of that date, regardless of when the evidence was generated.

Initially, the timing of Thomas's claim for disability benefits is somewhat suspect. Since January of 1997, he had been seeing a therapist and a psychiatrist for his mental condition. Both of his mental health professionals had diagnosed Thomas's condition as moderate depression, largely related to his workplace environment. Despite his ongoing depression, Thomas continued to work without any documented difficulty during the period between January 1997 and February of 1998. But on February 18, 1998, Lockheed Martin sent a formal announcement to all of its employees, including Thomas, that it was closing its Panama City office

and terminating its Panama City employees. In that notice, Thomas was advised that he would be laid off when the office closed on March 18, 1998. The closing date was subsequently extended to March 27, 1998, but Thomas failed to report to work on March 17, 1998, or thereafter. I recognize that the prospect of the office's closing and being fired placed a great deal of stress upon all of the employees at Lockheed Martin's Panama City office. Moreover, the stress and uncertainty caused by this announcement undoubtedly contributed to Thomas's depression. However, until March 17th, he continued to report to work, to do his job, and to be consulted by his co-workers for advice. Therefore, the timing of Thomas's decision to stop going to work a few days before the office's closing is highly suspect.

I rely primarily, however, on the fact that no reliable medical evidence in the record suggests that Thomas's depression prevented him from performing the material duties of his job as of March 17, 1998. Though he continued to work, Thomas had been suffering from a moderate form of depression since January of 1997 due to job-related incidents involving Thomas and an assault by a co-worker. In fact, Lockheed Martin requested that Thomas seek counseling with a therapist and licensed psychologist, Suellyn Vanderslice, Ph.D. Her records indicate that the sole cause of Thomas's depression was his work environment at Lockheed Martin. Her therapy sessions with Thomas ended in the fall of 1997. Dr. Vanderslice, ultimately, referred Thomas to Dr. John Billingsley, a psychiatrist, for a medication evaluation. Dr. Billingsley saw Thomas at monthly intervals and prescribed various medications to Thomas throughout 1997 and 1998.[3] On March 17, 1998, the very date on which Thomas decided to stop going to work and now claims to have been too disabled to work, Dr. Billingsley met with Thomas, but Dr. Billingsley's records do not reflect any change in Thomas's condition. I take particular note that Dr. Billingsley continued Thomas on the same medication and increased the time between appointments to two months.[4] Dr. Billingsley's notes reflect nothing on that date regarding a disabling condition, nor anything at all indicating that he then felt that Thomas should not continue working. Thomas's decision to stop working on March 17, 1998, was not based on any then-documented medical or psychiatric opinion.

Though Dr. Billingsley did change his diagnosis of Thomas's depression as being disabling on April 9, 1998, that diagnosis occurred several weeks after Thomas had stopped working and after the pivotal date of March 17, 1998. By the time that Dr. Billingsley revised his diagnosis, not only had Thomas decided to stop working, but the Lockheed Martin facility in Panama City had been closed, so that Thomas no longer had a place to work. Therefore, Dr. Billingsley's later diagnosis cannot change his own records made on Thomas's last day of work. Likewise, Dr. Billings-

---

3. In light of the high dosages of medication prescribed to Thomas, the claim that these medications had no appreciable effect in countering Thomas's depression is suspect.

4. At an earlier appointment with Thomas on February 17, 1998, Dr. Billingsley had noted that he had "considered" changing the severity classification of Thomas's depression from moderate to severe, but he did not do so.

When read in conjunction with Dr. Billingsley's notes on the appointment of March 17, 1998, a reasonable inference is that Dr. Billingsley felt that Thomas had stabilized at "moderate" as of March 17, 1998. Therefore, the February notation is not evidence that Thomas was disabled, assuming that "severe" depression is disabling, while "moderate" depression is not.

ley's and Dr. Vanderslice's opinions that Thomas was disabled as of March 17, 1998, heavily relied upon by the plaintiff, were included in letters dated December 3, 1998, and January 20, 1999, respectively. These opinions simply do not square with their contemporaneous medical records. If Dr. Billingsley had felt that Thomas's condition had deteriorated to the point of disabling as of his appointment on March 17, 1998, it seems reasonable that Dr. Billingsley would have made some written record of it. He did not. It also would seem reasonable that he would have altered Thomas's medication in an attempt to deal with the deterioration. He did not. Most tellingly, instead of having Thomas return for his next appointment sooner than the monthly intervals previously scheduled, Dr. Billingsley actually extended the time——to an interval of two months. The reasonable inference from the best available contemporaneous evidence is that Dr. Billingsley did not, on March 17, 1998, feel that Thomas's condition had deteriorated to disabling.

It also was reasonable for LINA to question the relevance of Dr. Vanderslice's opinion, since she had no professional contact with Thomas on March 17, 1998, or even anywhere near that date.[5] The record submitted to LINA reflects that she last saw Thomas on September 18, 1997. In her deposition (pp. 65–66), Dr. Vanderslice indicates that her last psychotherapy session with Thomas was actually on October 7, 1997. Regardless of whether it was October 7th or September 8th of 1997, it is apparent that Dr. Vanderslice had no pro-

fessional contact with the plaintiff during the five or six months immediately preceding the critical date of March 17, 1998. Her notes and records made during Thomas's therapy sessions in 1997 do not reflect that Thomas's depression was disabling, and they certainly provide no basis for a finding of disability as of March 17, 1998. She did not see him again in a clinical setting until June 17, 1998. Only the records of Dr. Billingsley are reliable medical evidence of Thomas's depression as of March 17, 1998, and those records contain no indication that Thomas was unable to perform the essential duties of his job at that time.

Probably the best probative evidence in the record in support of Thomas's claim was the statement of William Schultz, Thomas's supervisor, who in a letter dated January 13, 1999, reported that he felt that Thomas had been unable to fully perform his job duties and had been basically dysfunctional in the two weeks prior to the closing of the Panama City facility. However, this letter, like the supporting letters from Thomas's treating doctors, is an opinion expressed long after the pivotal date of March 17, 1998, and appears to have been submitted, at least in part, out of sympathy for Thomas. I cannot give much weight to his opinion expressed so long after the event. Further, there is no objective support in the record for Schultz' characterization of Thomas's condition. In light of the medical records and evidence, as well as the timing of Thomas's claim and the fact that he continued to work during the

---

**5.** Plaintiff contends that the reasonableness of LINA's actions may be measured by cases construing Social Security disability provisions, which require consideration of the opinions of a claimant's treating and evaluating doctors unless 'good cause' is shown for rejecting them, such as when the treating physician's opinion is contradicted by notations in the medical records. *See Lucas v.* *Sullivan,* 918 F.2d 1567, 1574 (11th Cir. 1990); *Hillsman v. Bowen,* 804 F.2d 1179, 1181 (11th Cir.1986). In this case, Thomas's doctors expressed their opinions that he was disabled *after* his job with Lockheed Martin had been terminated, and their opinions are not consistent with their own contemporaneous records.

relevant time period, I find that it was reasonable for LINA to determine that Thomas's depression did not render him incapable of performing his regular occupation as of March 17, 1998.[6] *See e.g. Bolling v. Eli Lilly & Co.*, 990 F.2d 1028, 1029 (8th Cir.1993).

In contrast to LINA's determination, the SSA has concluded that Thomas was disabled under the Social Security laws, and that he became disabled on January 15, 1998. *See Whatley, supra,* 189 F.3d at 1314 n. 8 (permitting consideration of SSA's determination of disability in reviewing the reasonableness of the plan administrator's determination of benefits). However, the SSA's determination was based on Thomas's current condition at the time of his application, not on the facts as they existed on March 17, 1998. There is ample post-March 1998 evidence of other physical symptoms, including pain in his muscles and joints, fibromyalgia, dizziness, nausea, and a buzzing noise in his ears, all of which may be disabling, but have no relevance to his depression status on March 17, 1998. The fact that Thomas's social security benefits were made retroactive to January 15, 1998, is highly questionable because it is undisputed that Thomas continued to satisfactorily work for over two months beyond that date. Further, to the extent that the SSA decision was based upon the opinions of Dr.s Vanderslice and Billingsley, I do not accept their opinions as indicative of Thomas's condition as of March 17, 1998, although they may be as of some time after that date. But Thomas's mental or physical condition after March 17, 1998, is not material to the issues before me. The evidence in the record seems to indicate that the defendant's mental condition may

have become more severe during the mid and later months of 1998. However, the fact that Thomas may have become disabled a few weeks or a few months after March 17, 1998, does not change the fact that there was little or no credible evidence of such a disability as of March 17, 1998.

Though I find that a preponderance of the evidence in the administrative record fails to demonstrate that Thomas suffered from a disabling condition on March 17, 1998, additional evidence outside of that record also supports such a finding. First, Dr. Blankemeier, an expert for the defendants who reviewed Thomas's medical records, concluded that those records would have shown more severe symptoms if Thomas had been unable to perform his occupation due to severe depression as of March 17, 1998. Blankemeier Depo. at 20–28; Blankemeier Rpt. at 4. Second, despite various problems with co-workers, Thomas continued to report to work and to perform his job during the relevant time period preceding March 17, 1998. Third, in a separate action against Lockheed Martin for employment discrimination now pending in this Court [*Phyllis Toole and Lloyd Thomas v. Lockheed Martin Corp.*, Case No. 5:99cv148], Thomas stated under oath that prior to the closing of the Panama City office: "I knew that my work performance and quality were good and there was only one reason that I was not interviewed [for a new position] and that was my reporting of wrongdoing inside Lockheed Martin." Thomas Depo., Ex. 1 at 12. This admission by Thomas contradicts the position that he has taken in this case. Finally, to the extent that Thomas suffered from depression, the medical evi-

---

**6.** The plaintiff suggests that Thomas's "regular occupation" was his specific employment with Lockheed Martin. I disagree. Thomas's regular occupation was that of a senior support engineer, regardless of his specific employer. The record seems to show that the better description of the plaintiff's occupation is "electrician," which is even more generic.

dence in the record as of March 17, 1998, suggests that his depression was caused by his work environment at Lockheed Martin. His application for STD was made after the Lockheed Martin office in Panama City had closed and Thomas's job had been terminated. Therefore, it was reasonable for LINA to also conclude that whatever depression he may have had while employed would be lessened once he ceased working in that environment.[7]

After reviewing the evidence in the record, I find *de novo* that the plaintiffs have failed to prove by a preponderance of the evidence that Thomas suffered from a severe depressive disorder that rendered him unable to perform each and every material duty of his regular occupation as of March 17, 1998. Therefore, I find that defendants have not breached the Salary Continuation Agreement by denying Thomas's claim for STD benefits.

## C. *LINA's Denial of Thomas's LTD Claim (Count I).*

### 1. *Issue Two: Standard of Review for an Administrator's Factual Determinations.*

■ With respect to Thomas's claim for LTD benefits, the parties have raised the initial issue of whether the arbitrary and capricious standard of review should be heightened under the 'insurer conflict rule' when reviewing a plan administrator's findings of fact. On the facts of this case, the only decision actually made by LINA was a denial of the claim for STD benefits, which are entirely funded by Lockheed Martin and do not raise any conflict of interest. Further, when LINA denied the STD claim in April of 1998, there was nothing to indicate that Thomas would ever be eligible for LTD benefits (which required a continuing disability for six

months). Thus, for purposes of this issue, there was only a *possibility* of a conflict of interest, and not enough to trigger any heightened review. For that reason, I conclude that the arbitrary and capricious standard applies. However, I will address the issue of a heightened standard of review further for completeness.

Initially, it is well established that, when an ERISA plan grants the administrator discretion, the administrator's factual determinations are subject to an arbitrary and capricious standard of review. *See Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1450 (11th Cir.1997). Likewise, when an ERISA plan gives the administrator discretionary authority, an arbitrary and capricious standard of review is to be applied to review the administrator's interpretation of the plan's terms. However, under the principles of trust law, the Supreme Court has recognized that the arbitrary and capricious standard of review must be heightened when the administrator interpreting those terms has a conflict of interest. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989). The conflict of interest that must be addressed is the situation in which "an insurance company serves as ERISA fiduciary to a plan composed solely of a policy or contract issued by that company." *Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1561 (11th Cir.1990). In such a situation, the fiduciary "is exercising discretion over a situation for which it incurs 'direct, immediate expense as a result of benefit determinations favorable to [p]lan participants.'" *Id.* (citing *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir.1989)). Therefore, when reviewing the fiduciary's construction of plan terms "the degree of

---

**7.** The record reflects that Thomas had a partial lobectomy on the right side in his mid–20s due to repeat spontaneous pneumothorax. However, there is no evidence in the record to show that this prior procedure may currently have any effect upon Thomas.

deference actually exercised in application of the [arbitrary and capricious] standard will be significantly diminished." *Brown, supra,* 898 F.2d at 1568. To effectuate what has become known as a "heightened" arbitrary and capricious standard of review, the Eleventh Circuit has applied a burden shifting analysis, which requires the administrator to prove that its construction of its own plan's terms was not tainted by self-interest.[8] *See id.* at 1565–68. However, neither the Supreme Court nor the Eleventh Circuit has considered whether a different standard should be applied for reviewing the *factual* determinations of a plan administrator where the plan affords the administrator discretion and the administrator has a conflict of interest. *See Ladd v. ITT Corp.,* 148 F.3d 753, 754 (7th Cir.1998) (noting that conflicts of interests are often present in plan administrator's factual determinations).

Though this specific issue is a matter of some concern, it is unclear whether a reviewing court should or can pragmatically "heighten" an arbitrary and capricious standard of review of factual findings.

In *Pinto v. Reliance Standard Life Insurance Co.,* 214 F.3d 377 (3d Cir.2000), the Court of Appeals for the Third Circuit adopted a "sliding scale" approach to test the reasonableness of an administrator's decision by reviewing the context in which the decision was made. Under this approach, the conflict of interest is treated more specifically as a "factor" in applying the arbitrary and capricious standard. *See id.* at 392. As stated by the Third Circuit, "the best way to 'consider' these *potentially* relevant factors ... is to use them to heighten our degree of scrutiny, without actually shifting the burden away from the plaintiff." *Id.* (emphasis original). In so doing, " '[t]he greater the evidence of con-

8. Under the Eleventh Circuit's heightened arbitrary and capricious/burden shifting framework, the court must first determine that the fiduciary's interpretation was *legally* wrong. *See Brown, supra,* 898 F.2d at 1567 n. 12. I note that this seems to imply a limitation to *legal* interpretations by the fiduciary, and recognizes the major dividing gulf that exists between a review by the court of legal interpretations *vis-a-vis* factual interpretations. Here, there is no contention that LINA's *legal* interpretation was wrong. Thus, on its face, *Brown* does not alter the application of the standard arbitrary and capricious review. The difficulty of applying this legal analysis to a factual analysis is evident from how the "legally wrong" determination must be made. The determination first requires a finding that the claimant has "proposed a sound interpretation of the plan, one that can rival the fiduciary's interpretation." *Id.* at 1570; *see Stvartak v. Eastman Kodak Co.,* 945 F.Supp. 1532, 1534–35 (M.D.Fla.1996) (citing *Lee v. Blue Cross & Blue Shield,* 10 F.3d 1547, 1550 (11th Cir.1994)). If that finding has been made, the beneficiary must then show " 'that the fiduciary allowed himself to be placed in a position where his personal interest might conflict with the interest of the beneficiary.' " *Brown, supra,* 898 F.2d at 1565 (quoting *Ful-*

*ton Nat'l Bank v. Tate,* 363 F.2d 562, 571–72 (5th Cir.1966)). Once such a conflict has been shown, "the law presumes that the fiduciary acted disloyally." *Id.* At this point, "the burden shifts to the fiduciary to prove that its interpretation ... was not tainted by self-interest." *Id.* at 1566–67. To carry this burden, the plan administrator must show that its determination was made to benefit the class of all participants and beneficiaries. Absent such a showing, under a heightened standard of review, "a wrong but apparently reasonable interpretation is arbitrary and capricious." *Id.* The effect of this Eleventh Circuit methodology is to simply apply a presumption of arbitrary and capricious to the fiduciary's interpretation in virtually every conflict scenario. If there is a presumption against the plan administrator, the burden of overcoming that presumption seems to be greater than under a *de novo* standard of review. Thus, a thoughtful reader may well wonder how this "heightened" standard retains any resemblance to an arbitrary and capricious standard. In any event, if the plan administrator satisfies its burden of overcoming that presumption, then "the party challenging its action may still succeed if the action is arbitrary and capricious by other measures." *Id.* at 1568.

flict on the part of the administrator, the less deferential our abuse of discretion standard.'" *Id.* at 393 (quoting *Vega v. National Life Ins. Svcs., Inc.,* 188 F.3d 287, 297 (5th Cir.1999)). Intellectually, the Third Circuit's approach to the review of findings of fact seems to be a better way to account for the administrator's potential conflict of interest under an arbitrary and capricious standard of review.[9]

In *Pierre v. Life Insurance Co. of North America,* 932 F.2d 1552 (5th Cir.1991), the Court of Appeals for the Fifth Circuit recognized a distinction between the degree of deference that a reviewing court must afford an administrator's factual findings as opposed to interpretations of contract terms. Because of this distinction, the court of appeals concluded that a reviewing court should apply an arbitrary and capricious (not *de novo*) standard of review to a plan administrator's factual determinations, even in the absence of a grant of discretion. *See id.* at 157–58. The Fifth Circuit explained that special deference is owed to factual decisions of a claimant's eligibility for benefits because such eligibility is not easily discerned by a reviewing court from a cold record. *See id.* at 1557–58. As recognized in *Pierre,* "[i]n virtually all decisional review, some deference is given to the fact finder, whether it is a district court giving deference to an administrative body, or an appellate court giving deference to the district court. We see no reason here why the plan administrator, i.e., the trier of

fact, should be placed in a different status." *Id.* at 1559 (citations omitted).

However, in *Rowan v. Unum Life Insurance Co.,* 119 F.3d 433 (6th Cir.1997), the Sixth Circuit observed that every other Circuit addressing the issue has disagreed with the Fifth Circuit's reasoning in *Pierre.* *See id.* at 435 (citing *Ramsey v. Hercules Inc.,* 77 F.3d 199 (7th Cir.1996); *Luby v. Teamsters Health, Welfare, & Pension Funds,* 944 F.2d 1176 (3d Cir. 1991); *Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210 (4th Cir. 1990)). The Sixth Circuit noted that an analogy between the review of ERISA plan eligibility decisions and appellate review of decisions from a district court or an administrative body is inappropriate because the ERISA situation involves an initial decision maker with a conflict, which is impermissible in the judicial context. This fact alone gives the plan administrator an incentive to not be neutral in its factual findings. *See id.* at 436. Furthermore, the Seventh Circuit determined that there was no meaningful distinction between factual determinations and legal interpretations by plan administrators because "[u]nder the general principles of trust law, courts do not alter the standard under which they review a trustee's decision based on the characterization of that decision as interpretive or factual." *Ramsey v. Hercules Inc.,* 77 F.3d 199, 203 (7th Cir.1996).

Nevertheless, in virtually all decisional review, some deference is given to the fact

---

9. The sentiments expressed by the Third Circuit are worth repeating:

> [T]here is something intellectually unsatisfying, or at least discomforting, in describing our review as a "heightened arbitrary and capricious" standard. The locution is somewhat awkward. The routine legal meaning of an "arbitrary and capricious" decision is that used, quite understandably, by the district court: "without reason, un-

supported by substantial evidence or erroneous as a matter of law." Once the conflict becomes a "factor" however, it is not clear how the process required by the typical arbitrary and capricious review changes. Does there simply need to be more evidence supporting a decision, regardless of whether that evidence was relied upon?

*Pinto, supra,* 214 F.3d at 392.

finder. *See e.g. Venus Lines Agency, Inc. v. CVG Int'l Am. Inc.*, 234 F.3d 1225, 1228 (11th Cir.2000) (recognizing that court of appeals reviews district court's factual findings under clearly erroneous standard and its conclusions of law *de novo*). Moreover, a reviewing court is much more capable of interpreting a contract's terms, as opposed to making determinations from the often-very-technical facts at issue. Though I recognize the dangers posed by conflicts of interests, those conflicts alone do not equate factual findings to plan interpretations, which are distinctly different. When a fiduciary adopts a questionable interpretation of an ambiguous term in its own ERISA plan, it, essentially, rewrites the contract between the insurance company and its beneficiaries. When that construction favors the fiduciary's own interests at the expense of the interests of the beneficiaries, the interpretation runs contrary to the principle of *contra proferentem*, which requires that ambiguous terms in documents be construed against the drafter. No similar legal principle applies to the fiduciary's findings of fact.

I also find that the burden-shifting analysis proposed by the plaintiff and employed in *Lake v. UNUM Life Insurance Co.*, 50 F.Supp.2d 1243 (M.D.Ala.1999), is impractical for reviewing an administrator's findings of fact.[10] In the context of factual findings, shifting the burden to the administrator, as was done in *Lake*, fails to accord the fiduciary *any* deference, which is the hallmark of the arbitrary and capricious standard of review. The effect is to create a presumption of acting arbitrary and capricious, which the fiduciary must rebut. This bears no resemblance to an arbitrary and capricious standard; it is more stringent than *de novo*, for it places the burden of proof on the fiduciary.

As previously noted, I find that the arbitrary and capricious standard should be applied in this case, and I decline to attempt to try to fashion some methodology for transforming it into some heightened level of review. If required to do so, it seems to me that the Third Circuit's approach is best. As a factor for consideration in the reasonableness of the fiduciary's determination, I would have to conclude that the possible conflict of interest in this case had no effect upon LINA's decision on the LTD benefits.

### 2. *Issue Three: Application.*

■ When an ERISA plan, such as the one at issue, grants the administrator discretion, the administrator's factual determinations are reviewed under an arbitrary and capricious standard of review. *See Paramore, supra,* 129 F.3d at 1450. As previously discussed, I have found *de novo* that LINA's decision to deny Thomas's claim for STD benefits was supported by a preponderance of the evidence and was reasonable. Therefore, to the extent that LINA's decision regarding the STD benefits constituted a denial of Thomas's claim for LTD benefits, it necessarily follows that it was not arbitrary and capricious.

Applying the arbitrary and capricious standard of review independently to the denial of LTD benefits, I find that the administrative record supports LINA's determination that Thomas was not suffering from a disability on his last day of work at Lockheed Martin. Moreover, in reviewing all of the surrounding circumstances, including the potential that LINA may have been motivated by its own self-interest, I find that LINA's determination was reasonable. Thus, due to the deference that must be afforded a fiduciary's discretionary findings of fact, I conclude that

---

**10.** In *Lake,* the trial judge modified the Eleventh Circuit's burden-shifting procedure in an attempt to make it fit a review of factual determinations.

LINA's denial of LTD benefits was reasonable and was not arbitrary and capricious.

### 3. *Issue Four: Taxation of Fees and Costs.*

 ERISA provides for an award of reasonable attorney fees and costs on a discretionary basis under Title 29, United States Code, Section 1132(g). As have other circuits, the Eleventh Circuit has adopted five factors as the "nuclei of concerns" that should govern a district court's determination of whether an award of attorney fees is appropriate in an ERISA case. These factors are:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney fees; (3) whether an award of attorney fees would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and, (5) the relative merits of the parties positions.

*Dixon v. Seafarers' Welfare Plan,* 878 F.2d 1411, 1412 (11th Cir.1989); *Freeman v. Continental Ins. Co.,* 996 F.2d 1116, 1119 (11th Cir.1993).

In applying these factors, I find that neither party is entitled to an award of attorney fees. The record does not suggest that Thomas has the financial means to pay the attorney fees of the defendants. More importantly, I find that both parties sought in good faith to resolve a significant legal question regarding ERISA in this case, specifically the applicable standard of review for factual findings by a plan administrator with a possible conflict of interest. For these reasons, an award of attorney fees in this case is inappropriate,

and the requests for such fees are DENIED.

### CONCLUSION

For the above reasons, plaintiff's motion for summary judgment (doc. 53) is DENIED, and defendants' motion for summary judgment (doc. 44) is GRANTED. The Clerk is directed to enter judgment accordingly. No fees and costs shall be taxed.