GREGG COSTA, Circuit Judge,
joined by EDWARD C. PRADO and STEPHEN A. HIGGINSON, Circuit Judges, specially concurring:
As any sports fan dismayed that instant replay did not overturn a blown call learns, it is difficult to overcome a deferential standard of review.[1] The deferential standard of review our court applies to ERISA decisions often determines the outcome of disputes that are far more important than *763 a sporting event: decisions made by retirement and health plans during some of life’s most difficult times, as this case involving a teenager with a serious eating disorder demonstrates. So it is striking that we are the only circuit that would apply that deference to factual determinations made by an ERISA administrator when the plan does not vest them with that discretion. Compare Pierre v. Conn. Gen. Life Ins. Co. of N. Am., 932 F.2d 1552, 1562 (5th Cir. 1991), with Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 250-51 (2d Cir. 1999); Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1183-84 (3d Cir. 1991); Reinking v. Phila. Am. Life Ins. Co., 910 F.2d 1210, 1213-14 (4th Cir. 1990) (overruled on other grounds by Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th Cir. 1993)); Rowan v. Unum Life Ins. Co. of Am., 119 F.3d 433, 435-36 (6th Cir. 1997); Ramsey v. Hercules, Inc., 77 F.3d 199, 203-05 (7th Cir. 1996); Walker v. Am. Home Shield Long Term Disability Plan, 180 F.3d 1065, 1070 (9th Cir. 1999); Shaw v. Conn. Gen. Life Ins. Co., 353 F.3d 1276, 1285 (11th Cir. 2003) (all applying de novo review when the plan does not grant discretion).
Pierre did not have the benefit of this robust ease law. It was writing largely on a blank slate as only one other circuit (the Fourth) had at that time ruled on the standard to apply to factual determinations in ERISA cases when the plan did not delegate discretion to the administrator. 932 F.2d at 1556-57. The unanimous view of the six other circuits that have weighed in on the other side of the split Pierre created, as well as other developments during the quarter century since we decided the question, calls our view into doubt.
Pierre turned largely on an interpretation of a then-recent Supreme Court case, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Pierre had to decide whether the de novo standard of review discussed in Firestone applies only to interpretations of plan terms or also includes factual determinations of benefit eligibility. Pierre, 932 F.2d at 1556 (noting conflicting language in Firestone on this question). In addition to every other circuit reading Firestone differently,[2] a more recent Supreme Court decision — even if it does not “unequivocally direct[]” us to overrule our precedent[3]— counsels against Pierre’s reading. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), lists the following as one of the “principles of review” that Firestone set forth: “Principles of trust law require courts to review a denial of plan benefits ‘under a de novo standard’ unless the plan provides to the contrary.” Id. at 110-111, 128 S.Ct. 2343 (quoting Firestone, 489 U.S. at 115, 109 *764 S.Ct. 948). A “denial of plan benefits” may and often 'does encompass a denial based on factfinding. Glenn treats de novo review as the general standard without limiting it to denials “based on plan term interpretations,” the phrase that appeared in one Firestone passage on which Pierre placed much importance. Pierre, 932 F.2d at 1556 (quoting Firestone, 489 U.S. at 108, 109 S.Ct. 948).
Apart from Glenn’s implication that Pierre’s deference is not warranted, one of the primary reasons we cited for that deference — that trust law draws a distinction between judicial review of a trustee’s legal and factual decisions — has not withstood scrutiny. Trust law traditionally provided different standards of review based on whether a decision was mandatory or discretionary according to the trust document, not whether that decision was factual or legal. Ramsey, 77 F.3d at 203. In a thorough discussion citing treatises on trust law as well as nineteenth century British and American cases, the Seventh Circuit found no basis for distinguishing legal questions from factual ones because “[e]ver since the English courts of equity developed the trust instrument, trustees have been answerable to the beneficiaries for a host of factually specific decisions, including reviews of accounts and investment decisions.” Id. Another reason Pierre gave for finding a fact/law distinction in trust law — that factual decisions are “necessary or appropriate” for plan administration and thus are granted deference under the Restatement (Second) of Trusts (see Pierre, 932 F.2d at 1558) — applies with equal force to plan interpretations. See Rowan, 119 F.3d at 436 (concluding that the Restatement language Pierre relied on “does not provide any basis for distinguishing between court review of factual determinations and review of interpretations of claim language”). One prominent scholar argues that Firestone got trust law wrong: “classic trust law assumed that the trustee had discretion unless the trust instrument or some particular doctrine of trust law provided otherwise,” whereas Firestone says that the default standard is de novo and the plan has to grant discretion. Ramsey, 77 F.3d at 203-04 (citing John H. Langbein, The Supreme Court Flunks Trusts, 1990 Sup. Ct. Rev. 207, 219). So Pierre may well be correct in reading trust law as providing deferential review for fact-based decisions when the plan was silent. It failed to recognize, however, that Firestone “reversed the presumption.” Id. at 204. As “there was and is no [trust law] distinction based on the kind of decision the trustee is making,” id., trust law’s congruity for review of legal or factual questions would seem to support applying Firestone’s de novo standard to review of denials of any sort.
Pierre’s analogy to the limited factual review appellate courts give trial courts and administrative agencies has also been questioned. That deference is to a neutral factfinder, whereas ERISA plan administrators often have conflicts of interest as many both decide and pay claims. Perez v. Aetna Life Ins. Co., 96 F.3d 813, 823-24 (6th Cir. 1996), vacated for reh’g en banc, 106 F.3d 146 (6th Cir. 1997); see also Rowan, 119 F.3d at 436. As the Seventh Circuit has explained, district courts and administrative agencies “enjoy [] a well established set of procedural protections that stem from the Constitution and individual statutes. Plan administrators, in contrast, neither enjoy the acknowledged expertise that justifies deferential review for agency cases, nor are they unbiased fact finders like the courts.” Ramsey, 77 F.3d at 205 (internal citation omitted). Glenn reinforced this distinction, holding that judicial review should take account of a plan administrator’s conflict even under the abuse of discretion review that governs when a plan grants discretion. 554 U.S. at 115, 128 S.Ct. 2343. Granting those conflicted deci- *765 sionmakers deference even when the plan does not call for it would “afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted.” Rowan, 119 F.3d at 436 (quoting Firestone, 489 U.S. at 114, 109 S.Ct. 948).
Pierre also voiced concerns about courts’ ability to conduct de novo review of factual determinations, believing that it would be a “difficult and uncertain exercise on a cold record.” 932 F.2d at 1559. In the place of speculation, we now have the experience of seven other circuits. No administrative difficulties are evident from these circuit’s de novo review of benefit denials that rest on factual determinations. Doctors’ reports provide district courts with guidance on determining factual issues, and courts can appoint independent experts to evaluate complicated medical evidence. See, e.g., Walker v. Am. Home Shield Long Term Disability Plan, 180 F.3d 1065, 1070-71 (9th Cir. 1999). When doctors’ reports reach differing conclusions, it is well within the capabilities of a district court to determine which is more credible. See Grady v. Paul Revere Life Ins. Co., 10 F.Supp.2d 100, 113-14 (D. R. I. 1998) (evaluating how much exposure a reviewing doctor had with the claimant to decide whether the reviewing doctor’s diagnosis was credible). That evaluation of medical testimony is something federal courts are much more familiar with now than when Pierre was decided given the advent of Daubert hearings. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
The pillars supporting Pierre may have thus eroded. This question concerning the standard of review for ERISA cases is not headline-grabbing. But it is one that potentially affects the millions of Fifth Circuit residents who rely on ERISA plans for their medical care and retirement security. When decisions by those plans are challenged in court, Pierre matters now much more than it did. Texas’s anti-delegation statute (assuming it is not preempted) means that the abuse of discretion standard is no longer dictated for most cases by plan provisions vesting discretion, but by Pierre’s default deference. And the circuit split on that default standard undermines the uniform treatment of ERISA plans — sometimes the same plan offered by employers in different states — that the federal statute seeks to achieve. Gobeille v. Liberty Mut. Ins. Co., — U.S. -, 136 S.Ct. 936, 944, 194 L.Ed.2d 20 (2016).
The default standard for judicial review of fact-based ERISA decisions was a significant enough question for two Justices to vote to review Pierre after it created a split with the Fourth Circuit. Pierre, 502 U.S. 973, 973-74, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). The lopsided split that now exists cries out for resolution.

. See National Football League, Official Playing Rules of the National Football League, R. 15, § 2, art. 3 (2016) (“A decision will be reversed only when the Referee has clear and obvious visual evidence available that warrants the change.”); see also Major League Baseball, Official Baseball Rules, R. 8.02(c) (2016).

. Other circuits place considerable weight on the broad language Firestone used when describing review of an administrator's factual decision: "we hold that a denial of benefits ... is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.” Firestone, 489 U.S. at 115, 109 S.Ct. 948 (emphasis added). A plan administrator generally makes factual determinations when determining the eligibility for benefits, so this language has been read broadly to apply de novo review to factual findings. See, e.g., Ramsey, 77 F.3d at 202. Circuits also emphasize that deferring to the administrator when the plan does not vest her with fact-finding authority would "afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted.” Rowan, 119 F.3d at 436 (quoting Firestone, 489 U.S. at 114, 109 S.Ct. 948).

. In re Tex. Grand Prairie Hotel Realty, LLC, 710 F.3d 324, 331 (5th Cir. 2013) (quoting Reed v. Fla. Metro. Univ., Inc., 681 F.3d 630, 648 (5th Cir. 2012) (noting this as the high standard needed for us to conclude that a Supreme Court opinion overrules our precedent)).