**Nancy PARNESS, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**No. 02–80567–CIV.**

United States District Court, S.D. Florida.

Aug. 13, 2003.

1348

David John White, Searcy, Denney, Scarola, Barnhart & Shipley, West Palm Beach, FL, for plaintiff.

Ralph Colby Losey, Stephanie Ann Seg-alini, Katz, Kutter, Alderman, Bryant & Yon, Orlando, FL, for defendant.

### *FINAL SUMMARY JUDGMENT*

ZLOCH, Chief Judge.

THIS MATTER is before the Court upon Defendant, Metropolitan Life Insurance Company's Motion for Summary Judgment (DE 13). The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises.

### I. *Background*

Plaintiff, Nancy Parness (hereinafter "Parness"), commenced the above-styled cause by filing a Complaint (DE 1, Ex. A) in state court pursuant to the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. § 1001, *et seq.*, seeking to recover long term disability (hereinafter "LTD") benefits under a plan issued to her employer, Bank of America, by Defendant Metropolitan Life Insurance Company (hereinafter "Metlife"). Specifically, Parness alleges that she is disabled and due LTD benefits under the plan. Metlife contends that Parness is not entitled to LTD benefits because she is not disabled. Metlife timely removed the above-styled to federal court and this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

The facts giving rise to Parness's Complaint are as follows. On July 26, 1998, Parness was involved in an automobile accident wherein she sustained a fractured dislocation at C6 and C7, a neurogenic bladder and bowel, a fracture of the left wrist, an injury to the cervical spinal cord at C6, deep vein thrombosis, multiple facial lacerations, and left ear and neck lacerations. (A.R.120, 126).[1] At the time of the accident Parness was employed by Bank of America as a Banking Center Manager and was a participant in Bank of America's Long Term Disability Benefits Plan which was funded by a group policy of insurance issued by Metlife to Bank of America. (DE 13, Def.'s Mot. for Summ. J., Ex. A (the "plan")). Bank of America acted as the plan administrator, but Metlife was responsible for determining eligibility for benefits and making all payments from the plan. (*Id.*, Ex. C at 10.2, 13.6 (the "Summary Plan Description")).

Following the accident Parness was admitted to St. Joseph's Hospital in Tampa, Florida, where she remained a patient until August 28, 1998. (A.R.120). On August 10, 1998, Parness underwent an operation to fuse her C5, C6, and C7 vertebrae. (A.R.59). On August 18, 1998, Parness underwent a second surgical procedure that involved the insertion of a left subclavian triple lumen catheter central venous catheter. (A.R.63).

On August 29, 1998, Parness was transferred from St. Joseph's Hospital to the Healthsouth Sunrise Rehabilitation Hospital (hereinafter "Healthsouth") where she received comprehensive rehabilitation treatment, including physical therapy and occupational therapy. (A.R.71). She remained a patient at Healthsouth until November 23, 1998. (A.R.119). At the time of her discharge, Parness was wearing a halo vest and walking with a cane. (A.R. 125). In late 1998, Parness returned to work at Bank of America and continued working until April 30, 2001. (A.R.125).

Between late 1998 and April 30, 2001, Parness was treated by a number of physicians. On December 28, 1998, Michael A. Kelley, M.D. diagnosed Parness as having adhesive capsulitis and probable impingement of the left shoulder. (A.R.82–83).

---

1. "A.R." refers to the administrative record filed by Metlife in support of its Motion for Summary Judgment. *See* DE 13, Def.'s Mot. for Summ. J., Ex B.

Dr. Kelley recommended treating the shoulder with Celestone and lidocaine and a program of physiotherapy. (*Id.*). On July 15, 1999, John Coates, M.D. reviewed x-rays of Parness's spine taken in June of 1999, and noted that there did not "appear to be a significant amount of fusion bone present." (A.R.87). Dr. Kelley also noted that the x-rays looked stable and that Parness advised that "she does not have any real significant neck pain but just some muscle soreness which is significantly being helped by the therapy." (*Id.*). On July 8, 1999, Dr. Coates also noted that Parness advised that she had been "having increasing problems since returning to a functional life back at work." (A.R.86). Parness also underwent a tendon transplant of her left hand performed by John McAuliffe, M.D. The procedure required two separate surgeries. (A.R. 90–88; 115).

Parness was also treated by Veronica S. Gipps, M.D. On March 20, 2001, Dr. Gipps reported that she had not seen Parness since November 2000, that Parness's cervical myelopathy had continued to improve, and that there were no further changes in the left upper extremity. (A.R.29). On August 14, 2001, Dr. Gipps reported that Parness had started working but complained of increased pain when attempting to work. (A.R.30). Dr. Gipps also reported that Parness was capable of performing daily living activities and encouraged her to stay as active as possible, but noted that Parness needed to work at her own pace. (*Id.*).

On February 5, 2001, Craig H. Lichtblau, M.D. performed a Comprehensive Medical Evaluation of Parness. (A.R.91–115). At the examination, Parness complained of weakness, fatigue, and difficulty sleeping due to constant pain. Parness also stated that she was experiencing daily headaches, episodes of dizziness, and having difficulty with coordination, memory, and emotional disturbances. (A.R. 114).

Dr. Lichtblau reviewed Parness's medical records and performed a Medical Functional Capacity Assessment, AMA Impairment Rating, and Functional Impairment Rating. (A.R.95–112). Based upon his review, Dr. Lichtblau's medical opinion was that Parness "will not be able to participate and maintain gainful employment in the competitive open labor market or in a sheltered environment with a benevolent employer, secondary to her acute, intermittent exacerbations of chronic pain." (A.R.91).

On April 30, 2001, Parness stopped working. (A.R.9). On May 1, 2001 she began receiving short term disability benefits. (*Id.*). On August 22, 2001, Parness applied for long term disability benefits stating that she was prevented from performing the duties of her job due to pain, fatigue, weakness, and limited mobility. (*Id.*). Parness submitted an Attending Physician Statement ("APS") completed by Dr. Lichtblau on September 13, 2001. In the APS, Dr. Lichtblau reiterated his earlier medical opinion that Parness would be unable to participate in gainful employment. (A.R.13). But Dr. Lichtblau also stated that Parness would be able to work a total of four (4) hours a day. (*Id.*). On December 3, 2001, however, Dr. Lichtblau signed a letter written by Parness's attorney on November 26, 2001 stating that the APS was incorrect and that Parness could not work four (4) hours a day and that it was his (Dr. Lichtblau) medical opinion that Parness was permanently and totally disabled. (A.R.31–32).

Metlife denied Parness's initial disability claim on December 10, 2001. (A.R.35–37). In support of this initial decision, Metlife relied upon the two reports from Dr. Gipps dated March 20, 2001 and August 14, 2001. (A.R.29–30). On March 20, 2001, Dr. Gipps stated that Parness had not seen her since November 2000, and that her

cervical myelopathy had continued to improve. (A.R.29). On August 14, 2001, Dr. Gipps stated that Parness was capable of performing her own activities of daily living, but needed to work at her own pace. (A.R.30). Dr. Gipps also encouraged Parness to stay as active as possible. (*Id.*). Metlife also relied upon an Employer's Job Description Statement which stated that Parness would be required to sit approximately four (4) hours a day, stand or walk six (6) hours a day, occasionally lift up to fifty (50) pounds once a day, occasionally carry up to ten (10) pounds once a day, and bend, squat, and reach above shoulder level. (A.R. 36; 10–11). Metlife concluded that the medical documentation did not support a level of severity of Parness's condition that would prevent her from doing her regular job for an employer. (A.R.36).

On February 5, 2002, Parness filed her appeal of Metlife's initial denial of her benefits. (A.R.120). Pursuant to 29 C.F.R. § 2560.503–1(i)(3)(i), Metlife had forty-five (45) days, or until March 24, 2002, to either decide Parness's appeal or seek an extension of time. Metlife did neither. (A.R.131). On April 1, 2002, Parness's counsel sent Metlife a letter asking for an update as to the status of Parness's appeal. (A.R.129A). Metlife responded by letter dated April 18, 2002 advising Parness that in accordance with ERISA it was having Parness's file reviewed by an independent physician consultant. (A.R. 129B). On April 23, 2002, Parness's counsel advised Metlife of his position that it had failed to perform a timely review of his client's claim and that he would be filing a complaint. (A.R.129C).

On April 30, 2002, the independent physician consultant, John D. Thomas II, M.D. filed his report. (A.R.134–138). Dr. Thomas II based his report upon a review of the Employer's Job Description Statement, Dr. Lichtblau's February 5, 2001

Comprehensive Medical Evaluation, the outpatient reports of Dr. Gipps, the September 13, 2001 APS signed by Dr. Lichtblau and submitted by Parness in support of her benefits claim, the letter signed by Dr. Lichtblau on December 3, 2001 clarifying the APS, and a telephone conversation with Dr. Lichtblau on April 30, 2002. (A.R.138). Dr. Thomas II concluded that the medical and vocational documentation did not support an inability to work. (A.R. 135). Specifically, Dr. Thomas II noted that while Parness clearly sustained significant traumatic injuries in the July 1998 car accident and had undergone many surgeries and a lengthy rehabilitation with multiple physicians and supportive medications, there did not appear to be a current diagnosis of her inability to work. (A.R.135). Dr. Thomas II also noted that Parness had worked from late 1998 until April 30, 2001, that Dr. Lichtblau had only seen Parness on one occasion (February 5, 2001), and that Dr. Gipps had encouraged Parness to remain active and had not attested to an inability to work. (*Id.*). Based upon the information available to Dr. Thomas II, his medical opinion was that Parness should attempt to return to work as a Banking Center Manager with small accommodations. (*Id.*).

On May 6, 2002, Metlife denied Parness's disability claim for a second time. Metlife relied upon all of the aforementioned medical and vocational documentation, including the report of Dr. Thomas II, and concluded that the medical and vocational information contained in Parness's file did not support an inability to work. (A.R.141–144). Thereafter, Parness commenced the above-styled cause.

## II. *Discussion*

### A. *Summary Judgment Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir.1990). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Indeed, "the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing on an essential element of the case to which the non-moving party has the burden of proof. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir. 1987). In other words, the standard for granting summary judgment is the same as the standard for granting a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The appellate courts, therefore, will generally affirm the granting of summary judgment if on any part of the prima facie case there would be insuffi-

cient evidence to require submission of the case to a jury. *Id.* at 252–256, 106 S.Ct. 2505; *Barnes v. Southwest Forest Indus., Inc.,* 814 F.2d 607, 609 (11th Cir.1987). The evidence of the non-moving party is to be believed, however, and all justifiable inferences are to be drawn in his or her favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barnes,* 814 F.2d at 609; *Borg–Warner Acceptance Corp. v. Davis,* 804 F.2d 1580, 1582 (11th Cir.1986). Where the moving party properly supports its motion for summary judgment, "the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must, through affidavits or as otherwise provided in Fed.R.Civ.P. 56, designate specific facts showing that there is a genuine issue for trial." *L.S.T., Inc. v. Crow,* 49 F.3d 679, 684 (11th Cir.1995) (internal quotations and citations omitted); *Eberhardt,* 901 F.2d at 1580.

**B. *Erisa Standard of Review***

■ ERISA does not provide a standard to review the decisions of a plan administrator or fiduciary. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), however, the Supreme Court established a range of standards to be used when reviewing the decisions of an ERISA plan administrator or fiduciary:

[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.... Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in deter-

mining whether there is an abuse of discretion.

*Id.* at 115, 109 S.Ct. 948 (citations and quotation marks omitted). Based upon *Firestone,* the Eleventh Circuit "has adopted three standards of review for plan interpretations: (1) *de novo* where the plan does not grant the administrator discretion[;] (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest." *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 993 (11th Cir.2001) (*quoting Buckley v. Metro. Life,* 115 F.3d 936, 939 (11th Cir.1997)).

Here, the plan documents clearly grant Metlife discretion to interpret the plan, and, indeed, Parness and Metlife do not dispute this point. The plan states:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(DE 13, Def.'s Mot. for Summ. J., Ex. A at 26). Additionally, the Court finds that Metlife has a conflict of interest because it determines eligibility for benefits and makes all payments from the plan. (DE 13, Def.'s Mot. for Summ. J., Ex. C at 13.5); *see also Brown v. Blue Cross & Blue Shield of Ala.,* 898 F.2d 1556, 1562 (11th Cir.1990) (concluding "that a 'strong conflict of interest [exists] when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims ....'" (citation omit-

ted)). Accordingly, the Court concludes that the heightened arbitrary and capricious standard of review is applicable in the above-styled cause. *See Jordan v. Metro. Life Ins. Co.,* 205 F.Supp.2d 1302, 1308 (M.D.Fla.2002) (stating that "[a] heightened standard of review is appropriate in certain cases where an insurer is also the claims fiduciary entrusted with determining the eligibility benefits under an ERISA plan.").

There is, however, an additional issue involved in the above-styled cause. Parness and Metlife do not dispute the meaning of "disabled" as that term is used in the plan and, therefore, Metlife's legal interpretation of the term "disabled" is not at issue in this matter. Rather, what is at issue here is a purely factual question: Is Nancy Parness disabled? The Eleventh Circuit has not articulated a standard by which a district court reviews the factual findings of an ERISA plan fiduciary vested with discretion who is operating under a conflict of interest. *See Carnaghi v. Phoenix Am. Life Ins. Co.,* 238 F.Supp.2d 1373, 1376 (N.D.Ga.2002) ("The Eleventh Circuit ... has yet to decide a standard for the review of factual determinations made by a conflicted plan administrator."); *Thomas v. Lockheed Martin Info. Sys.,* 155 F.Supp.2d 1316, 1324 (N.D.Fla.2001) (noting that neither the Supreme Court nor the Eleventh Circuit has considered what standard should be used to review the factual determinations of a conflicted plan administrator); *Lake v. UNUM Life Ins. of Am.,* 50 F.Supp.2d 1243, 1252 (M.D.Ala. 1999) (drawing a distinction between the legal interpretations and factual findings of a plan administrator and noting that "[t]he Eleventh Circuit has not expressly determined the proper standard for reviewing the plan administrator's *factual* determinations where the plan affords the plan administrator discretion and the administra-

tor has a conflict of interest." (emphasis in original)).[2]

The lack of a clear standard stems from the Supreme Court's opinion in *Firestone*. At one point in *Firestone*, the Supreme Court stated that its discussion was "limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on *plan interpretations*." *Id.* at 108, 109 S.Ct. 948 (emphasis added). Later in the opinion, the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948. This seemingly inconsistent language has lead the circuit courts of appeal to disagree over whether *Firestone* set a standard of review for the factual determinations of a plan administrator and what that standard should be.

The Fifth Circuit Court of Appeals in *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir.1991), found that *Firestone* did not address the issue of the factual determinations of a plan administrator and held that the factual determinations of a plan administrator should be reviewed under an abuse of discretion standard regardless of whether the plan vests the administrator with discretion. *Id.* at 1562. In support of its holding, the Fifth Circuit noted that "[i]n virtually all decisional review, some deference is given to the fact finder, whether it is a district court giving deference to an administrative body, or an appellate court giving deference to the district court." *Id.* at 1559 (citation omitted).

Other courts of appeal have disagreed with *Pierre*. The Sixth Circuit Court of Appeals in *Rowan v. Unum Life Ins. Co. of Am.*, 119 F.3d 433 (6th Cir.1997), in a case where the plan did not confer discretionary authority on the administrator, rejected the *Pierre* Court's analysis and held that the factual determinations of a plan administrator acting without discretionary authority are subject to *de novo* review. *Id.* at 435. The *Rowan* Court noted that courts reviewing the actions of trustees have not made a distinction between factual determinations and legal interpretation, that reviewing the decisions of a plan administrator who is a party to a private dispute is different than the review an appellate court undertakes when reviewing the factual findings of a neutral district court, and that *de novo* review can be avoided by drafting plans that confer discretionary authority on plan administrators. *Id.* at 436; *see also Ramsey v. Hercules*, 77 F.3d 199, 203–205 (7th Cir.1996) (applying *de novo* review to factual determinations and stating that "courts do not alter the standard under which they review a trustee's decision based on the characterization of that decision as interpretive or factual."); *Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1183 (3rd Cir.1991) (holding that an ERISA plan administrator's factual determinations are to be reviewed *de novo* ). According to these circuits, the standard of review depends not upon whether it is legal interpretation or factual findings that are being reviewed, but upon whether or not the plan administrator is vested with discretion to interpret the plan and make eligibility determinations.

**2.** Metlife is not the plan administrator in this matter. It is, however, a fiduciary due to the fact that it determines eligibility for benefits and makes all payments from the plan. The distinction between a plan administrator and a fiduciary makes no difference because the standard of review, as set forth in *Firestone*, applies equally to the decisions of both. *See Marecek v. BellSouth Telecommunications, Inc.*, 49 F.3d 702, 705 n. 1 (11th Cir.1995).

While the Eleventh Circuit has not clarified the standard to be used to review the factual findings of a conflicted plan administrator acting with discretion, it has held that the factual findings of a plan administrator vested with discretion who is not operating under a conflict of interest are subject to the arbitrary and capricious standard of review. *See Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1451 (11th Cir.1997) ("Thus, where the plan affords the administrator discretion, the administrator's fact-based determinations will not be disturbed if reasonable based on the information known to the administrator at the time the decision was rendered."). In *Paramore,* the Eleventh Circuit noted that it has consistently applied the arbitrary and capricious standard of review to the decisions of a plan administrator vested with discretion without distinguishing between legal interpretation and factual findings. *Id.* at 1450–51. The court went on to state that it had interpreted *Firestone* "to mean that, where an ERISA plan grants discretion to a plan administrator to interpret the express terms of the plan or to determine eligibility for benefits, we review both the administrator's construction of the plan and concomitant factual findings with respect to each case under an arbitrary and capricious standard of review." *Id.* at 1451.

The question remains open, however, as to what is the appropriate standard of review for the factual findings of a plan administrator vested with discretionary authority who is operating under a conflict of interest. For example, the district court in *Carnaghi* employed an "objectively reasonable" standard of review. *Carnaghi,* 238 F.Supp.2d at 1377. The district court in *Lake* applied a modified version of the Eleventh Circuit's burden-shifting analysis for a plan administrator's legal interpretation to the plan administrator's

factual findings. *Lake,* 50 F.Supp.2d at 1252–53. And the district court in *Jordan* determined that the plan administrator's benefits decision was not "wrong" because the decision was reasonable based upon the knowledge the plan administrator possessed at time of its decision. *Jordan,* 205 F.Supp.2d at 1308.

■ Regarding this issue, the Court notes that it is not at all clear how it can pragmatically "heighten" the arbitrary and capricious standard to review the factual findings of a conflicted plan administrator vested with discretion. Indeed, as stated by the Third Circuit:

> We acknowledge that there is something intellectually unsatisfying, or at least discomforting, in describing our review as a "heightened arbitrary and capricious" standard. The locution is somewhat awkward. The routine legal meaning of an "arbitrary and capricious" decision is that used, quite understandably, by the district court: a decision "without reason, unsupported by substantial evidence or erroneous as a matter or law." Once the conflict becomes a "factor" however, it is not clear how the process required by the typical arbitrary and capricious review changes. Does there simply need to be more evidence supporting a decision, regardless of whether that evidence was relied upon?

*Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 392 (3rd Cir.2000). Nevertheless, because the Supreme Court has stated that such a conflict of interest is a factor that must be weighed in determining whether there was an abuse of discretion, this Court shall apply the arbitrary and capricious standard of review previously articulated by the Eleventh Circuit to review the factual findings of a plan administrator or fiduciary vested with discretion, in this case Metlife, while factoring in Metlife's conflict of interest.[3]

---

**3.** The Eleventh Circuit equates the "arbitrary and capricious" standard and the "abuse of

■ Before turning to the question of whether Metlife's decision to deny Parness benefits was arbitrary and capricious under the standard articulated by this Court, the Court must resolve two additional issues. First, should the Court consider evidence not contained in the administrative record that was before Metlife when it made its decision to deny Parness benefits? The Eleventh Circuit has held that when a plan administrator's benefits decision is subject to arbitrary and capricious review, only the evidence before the plan administrator at the time the benefits decision was made may be considered in ruling upon a claim challenging that denial. *See Jett v. Blue Cross and Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir.1989) (stating that under the arbitrary and capricious standard of review "the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts known to the administrator at the time the decision was made."); *Lee v. Blue Cross and Blue Shield of Ala.*, 10 F.3d 1547, 1550 (11th Cir.1994) ("Application of the arbitrary and capricious standard requires us to look only to the facts known to the administrator at the time the decision was made to deny Lee coverage."). Moreover, district courts in the Eleventh Circuit have limited their review to the administrative record that was before the plan administrator even when applying the heightened arbitrary and capricious standard of review. *See Carnaghi,* 238 F.Supp.2d at 1377 ("The court may review the decision of the Plan administrator only on the basis of those materials available to the administrator at the time the final appeal decision was rendered."); *Johnson v. New York Life Ins. Co.,* 2001 WL 1736879, at *5 n. 4 (M.D.Fla. Aug.31, 2001)(noting that review under the heightened arbitrary and capricious standard is limited to the record that was before the plan administrator at the time the benefits decision was made.) Because the Court has concluded that the heightened arbitrary and capricious standard of review is appropriate in this matter, the Court shall limit its review to that evidence which was before Metlife at the time it denied Parness's claim for benefits.[4]

Parness argues that under the Eleventh Circuit's heightened arbitrary and capricious standard of review, the first step this Court must undertake is to review Metlife's decision *de novo* to determine whether it was "wrong."[5] Parness further argues that under this *de novo* review the Court may consider evidence outside the administrative record.

The Court disagrees. Parness appears to be equating the *de novo* review applied by a court when the plan administrator is not vested with discretionary authority,

discretion" standard in post-*Firestone* cases. *See Brown,* 898 F.2d at 1558 n. 1. To the extent that both terms are used in this Order, they are used interchangeably.

4. Accordingly, the Court shall not consider the Affidavits of Parness, David S. Bush, Ph. D., Alan Keith Gruskin, D.O., C.I., M.E., and Dr. Lichtblau submitted by Parness in opposition to Metlife's Motion for Summary Judgment. (DE 19, Exs. 1–4). Nor shall the Court consider the Affidavit of Laura Sullivan submitted in support of Metlife's Motion for Summary Judgment. (DE 16).

5. " 'Wrong' is the label used by [the Eleventh Circuit] to describe the conclusion a court reaches when, after reviewing *the plan documents* and *disputed terms de novo,* the court disagrees with the claims administrator's *plan interpretation.*" *HCA Health Servs. of Ga.,* 240 F.3d at 993 n. 23 (emphasis added). If a court agrees with the claims administrator's decision, the inquiry ends and the administrator's decision will be upheld. *Id.* at 993–94. If a court disagrees with the administrator's decision (i.e., the court concludes that the administrator's decision was wrong), then the court employs a burden-shifting analysis to see if that wrong decision was tainted by self-interest. *Id.* at 993–95.

under which the Court may consider evidence outside the administrative record, and the *de novo* review applied to the legal interpretation of disputed terms in the plan documents during the first step of the heightened arbitrary and capricious standard of review. The Court does not think they are the same. Indeed, if the Court were to follow Parness's reasoning it would essentially be subjecting Metlife's decision to a *de novo* review. That is, the Court would be considering evidence outside the administrative record which was not reviewed by Metlife at the time it made its decision to deny Parness benefits and substituting its own judgment based upon that new evidence. This is exactly what the arbitrary and capricious standard of review forbids. For this reason, it makes perfect sense to this Court not to subject Metlife's factual findings to a *de novo* review. Additionally, precedent in this circuit makes clear that this Court is limited to considering only the evidence that was before Metlife when it made its decision. *Jett,* 890 F.2d at 1139. Accordingly, the Court rejects Parness's argument.

■ Second, the Court must determine whether the report of the independent physician consultant, Dr. Thomas II, was properly part of the administrative record at the time Metlife denied Parness benefits. Parness filed her appeal of Metlife's initial denial of her claim on February 5, 2002. Pursuant to 29 C.F.R. § 2560.503–1(i)(3)(i), Metlife had forty-five (45) days to decide Parness's appeal. Metlife concedes that it did not decide Parness's appeal within forty-five (45) days, nor did it seek an extension of time to decide the appeal. Parness argues that her appeal was implicitly denied at the end of the forty-five (45) day period, on March 24, 2002, and, therefore, Dr. Thomas II's report, which was not submitted until April 30, 2002, should not be considered part of the administrative record. Metlife argues that it substantially complied with ERISA's proce-

dural requirements and that the report of Dr. Thomas II should not be excluded from the administrative record.

Here the Court agrees with Metlife. Although Metlife did not render a decision on Parness's appeal within the forty-five (45) days required by 29 C.F.R. § 2560.503–1(i)(3)(i), this technical violation of the regulations should not result in Dr. Thomas II's report being excluded from the administrative record. *See Perrino v. S. Bell Tel. & Tel. Co.,* 209 F.3d 1309, 1318 (11th Cir.2000) (stating that ERISA claimant should not be able to avoid exhaustion requirement where employer is technically noncompliant with procedural requirements but claimant still had fair and reasonable opportunity to pursue claim before filing suit in federal court); *Terry v. Bayer Corp.,* 145 F.3d 28, 39 (1st Cir.1998) (stating that "ERISA's notice requirements are not meant to create a system of strict liability for notice failures."). In response to Parness's letter dated April 1, 2002 (A.R.129A), Metlife advised Parness that in accordance with ERISA it was having her file reviewed by an independent physician consultant. (A.R.129B). Metlife was in the process of providing Parness with a thorough review of her claim and it notified Parness of its efforts. Therefore, the Court concludes that Parness was not deprived of a full and fair review of her claim, that Metlife substantially complied with the procedural requirements of ERISA, and that Dr. Thomas II's report should not be excluded from the administrative record.

Moreover, the Court notes that 29 C.F.R. § 2560.503–1 was amended in 2000 to delete language which stated that "[i]f the decision on review is not furnished within such time, the claim shall be deemed denied on review." *See* 29 C.F.R. § 2560.503–1(h)(4)(1998); *see also* 65 Fed. Reg. 70,246 (Nov. 21, 2000); *Jebian v.*

*Hewlett Packard Co.,* 310 F.3d 1173, 1177 n. 5 (9th Cir.2002) (discussing changes in regulations). The amendments apply to claims filed after January 1, 2002. *See* 29 C.F.R. § 2560.503–1(*o*)(2003). Therefore, the amended regulations apply to Parness's claim, which was filed on February 5, 2002, and do not provide that Metlife's untimely decision be deemed a denial of her claim.

### C. *Metlife's Benefits Decision*

■ Under an arbitrary and capricious standard of review, "the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Jett,* 890 F.2d at 1139. "As long as a reasonable basis appears for [Metlfie's] decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision." *Id.* at 1140.

■ Here, the Court finds that Metlife's determination to deny Parness benefits is supported by a reasonable basis, based upon the facts that Metlife possessed at the time of its decision. Under the plan:

"Disability" or "Disabled" means that, due to an Injury or Sickness, you require the Appropriate Care and Treatment of a Doctor unless, in the opinion of a Doctor, future or continued treatment would be of no benefit and:

1. you are unable to perform each of the material duties of your own occupation; and

2. after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience and past earnings; or

3. you, while unable to perform all of the material duties of your own

occupation on a full-time basis, are:

a. performing at least one of the material duties of your own occupation or any other gainful work or service on a part-time or full-time basis; and

b. earning currently at least 40% less per month than your Indexed Basic Monthly Earnings due to that same Injury or sickness.

(Def.'s Mot. for Summ. J., Ex. A at 6.). After reviewing all the medical and vocational documentation in Parness's file, Metlife determined that the evidence did not support a finding of disability. Specifically, Metlife considered the following:

1. The Employer's Job Description Statement (A.R.10–11) which required Parness to sit for four (4) hours a day, stand and walk for six (6) hours a day, occasionally lift up to between twenty (20) and fifty (50) pounds, occasionally carry up to ten (10) pounds, bend frequently, and occasionally squat and reach above shoulder level;

2. Dr. Lichtblau's February 5, 2001 Comprehensive Medical Evaluation (A.R.91–115), which concluded that Parness was "outside the window of therapeutic benefit for her injuries" and did not have the capacity to work four (4) hours a day;

3. Dr. Gipps's reports (A.R.29–30) which indicated that Parness's cervical myelopathy continued to improve, that Parness had started working, and that Parness was able to perform the activities of daily living, but needed to work at her own pace;

4. The APS (A.R.12–14) completed by Dr. Lichtblau on September 13, 2001, which stated that Parness was unable to participate and maintain any gainful em-

ployment in the competitive open labor market. The APS also stated, however, that Parness could work four (4) hours a day;

5. The letter of November 26, 2001 written by Parness's counsel and signed by Dr. Lichtblau on December 3, 2001 (A.R.31–32), which stated that Parness was permanently and totally disabled and could not work four (4) hours a day; and

6. The report of Dr. Thomas II, the independent physician consultant. (A.R. 134–38). After reviewing the medical and vocational documentation, as well as speaking with Dr. Lichtblau on the telephone, Dr. Thomas II concluded that Parness's level of impairment did not preclude her from working as a Banking Center Manager. Dr. Thomas II did not dispute that Parness had sustained significant traumatic injuries from the July 1998 car accident. Dr. Thomas II did note, however, that Parness was at work when Dr. Lichtblau examined her on February 5, 2001, that Dr. Lichtblau had only seen Parness once and did not plan on seeing her again, and that Dr. Lichtblau had explained that he was not Parness's treating physician. (*Id.*).

Based upon the aforementioned facts, the Court finds that it was reasonable for Metlife to deny Parness's claim for benefits. The Court finds that Metlife's decision was based upon sufficient medical and vocational evidence contained in the ad-

ministrative record. The Court also notes that under an arbitrary and capricious standard of review an ERISA plan administrator must resolve factual conflicts in the evidence and the fact that there is evidence contrary to the administrator's decision does not render that decision unreasonable. *Jett,* 890 F.2d at 1139. Metlife subjected Parness's claim for benefits to a thorough review, and in light of the evidence contained in the administrative record, the Court concludes that Metlife's decision was neither unreasonable nor effected by its conflict of interest.

### III. *Conclusion*

 After reviewing Metlife's Motion for Summary Judgment (DE 13) and Parness's Opposition (DE 17), the Court concludes that Metlife's decision to deny Parness's benefits claim was reasonable, and therefore, correct.[6]

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant, Metropolitan Life Insurance Company's Motion for Summary Judgment (DE 13) be and the same is hereby **GRANTED;**

2. Final Summary Judgment is hereby entered in favor of Defendant, Metropolitan Life Insurance Company, and against Plaintiff, Nancy Parness, and Plaintiff

---

6. Assuming the correct standard to review Metlife's factual findings is *de novo* based upon the administrative record as it existed at the time of Metlife's decision, the Court still finds Metlife's decision to be correct. That is, after a *de novo* review of the administrative record the Court finds that Metlife's decision was correct because Parness was not disabled. *See Johnson,* 2001 WL 1736879, at *7 (finding that defendants' decision to deny benefits was not wrong from the perspective of a *de novo* review); *Schindler v. Metro. Life Ins. Co.,* 141 F.Supp.2d 1073, 1083 (M.D.Fla.

2001) (agreeing with defendant's decision to deny benefits claim after a *de novo* review based upon administrative record that existed before plan administrator). Additionally, the Court concludes that remand is not necessary because Parness could have submitted to Metlife any additional evidence she believed Metlife needed to consider her claim thus making such evidence part of the administrative record. Parness did not, and therefore, remand is inappropriate. *Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1327–28 (11th Cir.2001).

shall take nothing by this action and said Defendant shall go hence without day;

3. The above-styled cause be and the same is hereby **DISMISSED** with prejudice; and

4. To the extent not otherwise disposed of herein, all pending Motions are hereby **DENIED** as moot.