**Douglas F. SMITH, D.O., Plaintiff,**

**v.**

**RELIANCE STANDARD LIFE INSURANCE COMPANY,**
**Defendant.**

**No. 03–61274–CIV–ZLOCH.**

United States District Court,
S.D. Florida.

Sept. 9, 2004.

Paul M. Sullivan, West Palm Beach, FL, For Plaintiff.

Gene D. Lipscher, Palm Beach Gardens, FL, For Defendant.

## ORDER

ZLOCH, Chief Judge.

THIS MATTER is before the Court upon Plaintiff, Douglas F. Smith, D.O.'s Complaint (DE 1). This Court has carefully reviewed said Complaint, the entire Court file and is otherwise fully advised in the premises. Additionally, oral argument was presented to the Court on July 13, 2004.

## I. BACKGROUND

In the instant Complaint (DE 1), Plaintiff, Douglas F. Smith, D.O. (hereinafter "Smith") seeks payment of long-term disability benefits under a policy (hereinafter the "Policy") issued by Defendant, Reliance Standard Life Insurance Company (hereinafter "Reliance"). The Complaint is brought pursuant to the Employment Income Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(A)(1)(b) and also seeks attorney's fees and costs pursuant to § 1132(g)(1).[1] On June 16, 2001, Smith, a physician specializing in obstetrics and gynecology, was injured in his right shoulder while performing surgery. DE 22, p.5. Smith filed his initial claim for benefits with Reliance on February 20, 2002, stating that his disability began on July 23, 2001. RSL 0112–0113. Reliance denied Smith's claim on June 4, 2002. DE 22, p.5.

■ The parties agree that Smith has exhausted all of his administrative remedies and that Reliance's decision to deny Smith benefits is subject to this Court's heightened arbitrary and capricious standard of review. DE 22, pp. 5,7. Moreover, the relevant facts are limited to the evidence presented to Reliance at the time of its decision to deny Smith benefits. *See Jett v. Blue Cross & Blue Shield of Ala.,* 890 F.2d 1137, 1139–40 (11th Cir.1987) (citations omitted); *see also Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1326 (11th Cir.2001) (*citing Jett,* 890 F.2d at 1139); *Parness v. Metro. Life Ins. Co.,* 291 F.Supp.2d 1347, 1356 (S.D.Fla. 2003) (*citing Jett,* 890 F.2d at 1139) (limiting the court's heightened arbitrary and capricious review to the evidence presented to the defendant insurer at the time it denied plaintiff benefits). The parties also agree that the total principal amount of unpaid benefits claimed by Smith is $319,200.00. DE 22, p.5.

### A. The Policy

The Policy provides, in relevant part:

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

(1) during the Elimination Period, an Insured cannot perform each and every material duty of his/her regular occupation; and

(2) for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;

(a) "Partial Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capa-

---

1. The evidence presented to Reliance and Reliance's denial of Smith's claim and his appeal were filed with the Clerk of the Court as part of Reliance's Memorandum (DE 14) in Support of its Motion for Summary Judgment and are Bates stamped numbered beginning with the designation "RSL." Throughout this Order, the Court cites to these documents by their RSL number.

ble of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;

(3) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

RSL 0079. Also, " 'Elimination Period' means a period of consecutive days of Total Disability ... for which no benefit is payable. It begins in the first day of Total Disability." RSL 0078. The Policy's Elimination Period is ninety (90) days. RSL 0076; *see also* DE 22, p.5.

### B. Smith's Claim and Treatment

In his February 20, 2002 disability claim "Statement", Smith states that he was unable to work because of "constant pain/weakness of dominant arm; numbness in dominant hand" and that he sought treatment from David Rubenstein, M.D., Steven Grossinger, D.O. and Robert Schwartzman, M.D. RSL 0112–0113. Smith further states that the duties of his employment are "OB/GYN Care, Surgery, deliveries" and that the physical requirements are "operating on pts. (R handed) Using forceps. Manual dexterity. Pulling, tugging, lifting." RSL 0115. Tenet

Health Systems (hereinafter "Tenet"), Smith's employer at the time of the inception of his disability, stated, as part of Smith's claim for disability benefits, that it did not have a rehire or return-to-work policy for disabled employees and that it did not have a full or part-time position which Smith would be suited for under a supervised rehabilitation program. RSL 0110a. Tenet further stated that Smith's occupation "frequently" requires "reaching/working overhead", "pushing", "pulling" and "lifting/carrying" and that the "major tasks" requiring the use of both hands are "physical exams", "delivering babies", and "performing surgeries." RSL 0111. Finally, Tenet stated that Smith's occupation cannot be modified to accommodate the disability either temporarily or permanently. RSL 0111a.[2]

Smith was evaluated by David Rubenstein, M.D. on July 17, 2001 (RSL 0144), July 24, 2001 (RSL 0145), September 11, 2001 (RSL 0155), and March 12, 2002 (RSL 0146).[3] In his first examination, Dr. Rubenstein advised Smith that the shoulder was probably subluxated and that Smith should take it easy and use a sling when possible. RSL 0144. On July 24, 2001, Dr. Rubenstein advised Smith not to use his shoulder aggressively, not to do any surgery or any significant manual examinations, and to continue use of a sling. RSL 0145. In September 2001, Dr. Rubenstein referred Smith to Dr. Robert Schwartzman, an expert according to Dr. Rubenstein. RSL 0155. On December 11, 2001, following a December 3, 2001 examination, Dr. Schwartzman determined that Smith had a brachial plexus traction injury. RSL 0153. On December 19,

---

**2.** The Court notes that all of the information provided by Smith and Tenet was provided to Reliance on their claim form and in response to the questions contained on that form.

**3.** The Court notes that copies of Dr. Rubenstein's reports and those of Smith's other physicians repeat throughout Reliance's record and are of various copy quality. The Court attempts to cite to copies which are clear.

2001, Dr. Schwartzman recommended that Smith "not work at the present time." RSL 0154. In March 2002, Dr. Rubenstein noted that Dr. Schwartzman confirmed Dr. Rubenstein's diagnosis and that Smith is "restricted in terms of various activities including overhead activities and repetitive activities as well as lifting." RSL 0146.

Dr. Steven Grossinger, D.O., also evaluated Smith and, on August 2, 2001, determined that Smith had a low tolerance for activities involving adduction or flexion of the shoulder and that Smith's "[p]rognosis for recovery is poor." RSL 0177. Upon a follow-up examination of Smith's shoulder and noting the physical requirements of an OB/GYN specialist, Dr. Grossinger stated on March 13, 2002 that Smith "is unfit for employment as a OB/GYN specialist." RSL 0150.

### C. Reliance's Denial Of Benefits

On June 4, 2002, in a letter signed by Carol Timlin, Sr. Examiner, Reliance denied Smith's long term disability claim. RSL 0036–0039. In that letter, Reliance noted that Totally Disabled and Total Disability as defined in the Policy does not relate to Smith's "job with a specific employer" or his "job in a particular work environment" or his "specialty in a particular occupational field." RSL 0036. According to Reliance, the Policy concerns Smith's "inability to perform [his] own or regular occupation as it is performed in a typical work setting for any employer in the general economy." RSL 0036. Reliance then cited the Dictionary of Occupational Titles published by the U.S. Department of Labor (hereinafter the "DOT") as stating that "the physical aspect of [a physician, specializing in OB/GYN] is light work, which means that in the course of an eight hour day [Smith] can lift/carry 20 lbs maximum and frequently lift/carry up to

10 lbs. Additionally, [Smith is] occasionally reaching; frequently handling, fingering, feeling, talking and hearing." RSL 0037. Reliance, also, points to the "Physician's Statement" completed by Dr. Rubenstein, RSL 0136–0139, stating that his last examination of Smith was on August 21, 2001 and which Reliance summarizes as stating that Smith:

> can have a LIGHT LIFT which means [Smith] can exert up tp [sic] 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly. As of that date, in an eight (8) hour day, [Smith] can perform the following activities Continuously [sic]; Sit, stand, walk, bend at waist, squat at knees, climb stairs, and use foot controls. [Smith] can frequently climb stairs, kneel, and drive and [he] can occasionally climb ladders, reach above and below the should [sic] with [his] left arm and crawl.

RSL 0037. Reliance continued, "As of March 12, 2002, Dr. Rubenstein stated [Smith is] limited from reaching overhead with [his] right upper extremity, repetitive activities and lifting" and then concluded, "According to the DOT for [Smith's] occupation, [he is] capable of 'light duty activity' and [is] not restricted from performing [his] regular occupation as it is a Light activity level." RSL 0037. Thus, Reliance found that because Smith was capable of "Light Activity" as of August 21, 2001, Smith did not satisfy the elimination period which ran through October 21, 2001. RSL 0038.

Smith appealed this determination and his appeal was denied in a letter dated August 30, 2002 and signed by Regina Angiolillo, Senior Benefit Analyst, Quality Review Unit. RSL 0008–0013. In this letter, Reliance notes that Smith's physician's evaluations do not exclude him from performing "each and every" material duty of

his regular occupation and specifically noted that Smith was not limited in his ability to perform "routine patient examinations and consultations." RSL 0010–0011. Reliance also notes that Dr. Grossinger stated in a March 13, 2002 letter that Smith had recently begun practice as a part-time OB/GYN in Ft. Lauderdale, Florida though Dr. Grossinger advised that Smith is unfit for employment as an OB/GYN specialist. RSL 0011. Reliance also considers the opinion of William Scott Hauptman, M.D. who it engaged to review Smith's medical records. Again, Reliance cites the DOT as designating the occupation of a physician specializing in OB/GYN as "light work." RSL 0012. Reliance summarizes stating that

> medical records continuously document that [Smith's] tolerance for certain activities was reduced and [Smith was] experiencing discomfort and fatigue in [his] arm. These symptoms however, are not of the level of severity which would preclude [Smith] from performing *each* and *every* material duty of [his] occupation as an OB/GYN physician.

RSL 0012. Reliance also states that Smith's return to part-time work in early 2002 is further support for finding that Smith is not "Totally Disabled" as that term is defined in the Policy. RSL 0012. Reliance finishes explaining that "[a]s long as [Smith was] capable of performing some, if not all, of the material duties of [his] occupation during the elimination period, [he] would not qualify for benefits according to the definition of 'Total Disability' as defined in [his] Policy." RSL 0013.

## II. ANALYSIS

### A. Heightened Arbitrary And Capricious Review

■ The parties agree that the Court shall apply the heightened arbitrary and capricious standard of review to Reliance's denial of Smith's claim. DE 22, p.7. This standard applies where, as here, a policy administrator is accorded discretion when considering the benefits claim and the insurer pays benefits out of it own funds such that a conflict of interest exists. *See Levinson*, 245 F.3d at 1325–26.

■ Pursuant to this standard the Court must first, considering *de novo* the evidence presented to Reliance, determine if Reliance's policy administrator's decision was wrong. *See id.* at 1326; *HCA Health Servs. of Ga. Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir.2001) (citations omitted); *Parness*, 291 F.Supp.2d at 1357. " 'Wrong' is the label used by [the Eleventh Circuit] to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation." *HCA Health Servs.*, 240 F.3d at 993 n. 23 (citations omitted); *see Parness*, 291 F.Supp.2d at 1357 n. 5. (*quoting HCA Health Servs.*, 240 F.3d at 993 n. 23). Second, if the administrator is wrong, the Court must look to see if the claimant proposes a reasonable interpretation of the disputed terms. *Id.* at 994 (*citing Lee v. Blue Cross/Blue Shield*, 10 F.3d 1547, 1550 (11th Cir.1994)); *see also Freling v. Reliance Standard Life Ins. Co.*, 315 F.Supp.2d 1277, 1286 (S.D.Fla.2004) (stating that the court must "determine whether Plaintiff propounds a sound and reasonable interpretation of the plan") (*citing HCA Health Servs.*, 240 F.3d at 993) (additional citations omitted). Next, the Court should consider whether the administrator's wrong interpretation is untainted by self-interest (i.e. it is reasonable and benefits the participants and beneficiaries of the plan). *See HCA Health Servs.*, 240 F.3d at 994–95 (citation omitted); *Freling*, 315 F.Supp.2d at 1287 (*citing HCA Health*

*Servs.,* 240 F.3d at 994–95). Thus, even if the administrator's interpretation is wrong, it may still be upheld as reasonable if untainted by self-interest.

### B. Disputed Terms

There are three terms related to the Policy's definition of "Totally Disabled" or "Total Disability" which are not specifically defined in the Policy and which Smith claims are ambiguous and wrongly interpreted by Reliance. They are "each and every", "material duty" and "regular occupation." DE 22, p.8. Two of these were recently litigated in a factually similar case before Judge Cecilia Altonaga of this Court. In that case, Eric Freling, M.D., an OB/GYN physician who injured his hand, sought total disability benefits from Reliance under a policy which contained the same language which is disputed in this case. *Freling,* 315 F.Supp.2d at 1279–80. Applying the heightened arbitrary and capricious standard, Judge Altonaga considered the terms "regular occupation" and "material duty" and ultimately determined that Reliance's interpretations, in Dr. Freling's case, were wrong and unreasonable and rejected them in favor of Dr. Freling's proposed interpretations. *See id.* at 1287–94. The Court will consider these terms first.

### 1. "Regular occupation"

■ In denying Smith's claim, Reliance states that Smith's "regular occupation" is defined by the DOT and is not specific to Smith's work for Tenet, a particular work environment or his specialty. RSL 0036–0037, 0012. In *Freling,* Judge Altonaga held that Reliance's application of the DOT is contrary to the Policy's plain language because "regular occupation" is qualified by "his/her" and, thus, is not a national standard but rather that the definition of regular occupation must be connected to

Freling. 315 F.Supp.2d at 1287–88. The same is true in the instant Policy and Reliance's application of the DOT standard is wrong.

Smith proposes that, following *Lasser v. Reliance Standard Life Ins. Co.,* 344 F.3d 381, 386 (3d Cir.2003) and like *Freling,* 315 F.Supp.2d at 1288, his "regular occupation" should be determined in reference to the usual work he performed immediately before the onset of the disability. DE 16, ¶ 31. The Court finds that based on the plain meaning of "his/her regulation occupation" this interpretation is reasonable.

Finally, the Court finds that Reliance's reliance on the DOT was unreasonable as it ignores the qualifier "his/her" in the Policy's language. In reaching this conclusion, the Court considers persuasive the case law and reasoning contained in *Freling,* 315 F.Supp.2d at 1289–91, and the fact that Reliance's own claim form includes a section entitled "Occupation Analysis" within which a claimant's employer is asked various questions about the "employee's occupation." RSL 0111. Reliance's promulgation of this section, which does not include any reference to the DOT, in connection with the Policy suggests that Reliance considers a claimant's occupation under the Policy to be determined by what that employee actually does for that employer.

### 2. "Material duty"

■ Reliance interprets "material duty" in the Policy by reference to the activities listed in the DOT under OB/GYN physician. *See* DE 14, p.11 (*citing* RSL 0125). Moreover, in rejecting Smith's claim, Reliance states that, regardless of the limitations caused by his disability, Smith was not precluded from performing "each and every material duty ... [b]ecause [Smith] had the ability to perform Light Activity as of August 21, 2001 ...." RSL 0038.

Citing the DOT, Reliance states that light work means that in an eight hour work day Smith could lift and carry 20 lbs maximum and frequently lift and carry up to 10 lbs and that he could occasionally reach and frequently handle, finger, feel, talk and hear. RSL 0037.[4]

As Smith's "regular occupation" is not defined by the DOT, Reliance was also wrong to interpret his material duties as those listed in the DOT. *See Freling*, 315 F.Supp.2d at 1291. On his claim form, Smith lists the duties of his occupation as "OB/GYN care, surgery, deliveries", RSL 0115, and asserts that in his regular occupation he "delivered babies and performed gynecological surgery and obstetrical and gynecological examinations of patients." DE 25, p.24. This is a reasonable interpretation of the "material duties" Smith performed as part of his regular occupation and is supported by his employer which lists Smith's major activities requiring the use of at least one hand[5] as "physical exams", "delivering babies" and "performing surgeries" and notes that Smith frequently must reach/work overhead, push, pull and lift/carry. RSL 0111.

Reliance's interpretation of "material duty" is also unreasonable. Not only does Reliance fail to consider Smith's duties in his regular occupation, as was reported to Reliance by both Smith and Tenet on the claim forms, in favor of the general duties listed in the DOT, but Reliance also fails to consider whether any of the duties listed in the DOT are "material duties."

The materiality of a given occupational duty depends upon the importance of that duty to the claimant's professional endeavors, measured as a combination of the amount of time the activity consumes and its qualitative importance to the professional mission. A duty is "material" when it is sufficiently significant in either a qualitative of quantitative sense that an inability to perform it means that one is no longer practicing the "regular occupation."

*Lasser v. Reliance Standard Life Ins. Co..* 146 F.Supp.2d 619, 636 (D.N.J.2001) *as quoted in Freling*, 315 F.Supp.2d at 1292. Reliance's interpretation of "material duty" as all of the duties listed in the DOT under OB/GYN physician without regard to the importance of each of those duties to Smith's occupation cannot be accepted by the Court.

*3. "Each and every"*

Reliance, during the July 13, 2004 hearing regarding the above-styled cause, maintained that the Court cannot rely on the holding of *Freling* in determining the outcome of Smith's Complaint, because Judge Altonaga failed to consider the effect of the term "each and every" in the definition of Total Disability/Totally Disabled. Reliance interprets "each and every" to mean that Smith "was not totally disabled if he was capable of performing even one material duty of his regular occupation." DE 18, p.8. Conversely, Smith argues that "each and every" is ambiguous and therefore must be construed against the drafter such that "each and every" means that the person is disabled if s/he is unable to perform any one material duty of his/her occupation. DE 16, pp. 10–14.

---

**4.** Rejecting Smith's appeal, Reliance added to their adoption of the DOT's light work definition stating that in evaluating his ability to perform his material duties Smith "may continuously sit, stand, walk, bend at the waist, squat at the knees, climb stairs, and use foot controls", may "frequently climb stairs, kneel,

and drive and [he] may occasionally climb ladders, reach above and below the shoulder with [his] left arm." RSL 0012.

**5.** The Court notes that Tenet actually says that these tasks require the use of both hands. RSL 0111.

The Court finds, however, that it is unnecessary to apply the heightened arbitrary and capricious standard to this conflict. Assuming Reliance was not wrong in its determination that "each and every" requires that Smith was not Totally Disabled if he was capable of performing even one material duty of his regular occupation, it was nonetheless wrong in denying Smith's claim.

### C. Smith's Disability Claim

■ The question presented is whether Smith was unable to perform even one of the material duties of his occupation. Based on a heightened arbitrary and capricious review of the disputed terms, Reliance was wrong to deny Smith's claim. The material duties of Smith's occupation are performing surgery, deliveries and physical exams. RSL 0111, 0115. These duties require the use of both hands and frequently require reaching and working overhead, pushing, pulling, lifting, carrying, using forceps and manual dexterity. RSL 0111, 0115.

In the week following his injury, Smith's physician determined that he could not do surgery or significant manual examinations. RSL 0145. Moreover, within a month an expert determined that Smith's "prognosis for recovery is poor." RSL 0177. Upon followup in December 2001—after completion of the Policy's ninety (90) day Elimination Period—Smith was diagnosed with a brachial plexus traction injury and he was told not to work. RSL 0153, 0154. Furthermore, in March 2002, Reliance was informed that Smith was "restricted in terms of various activities including overhead activities and repetitive activities as well as lifting." RSL 0146. Again, Smith's physician reports that Smith is "unfit for employment as a OB/GYN specialist." RSL 0150.

On August 9, 2002, Reliance's own expert physician determined, upon review of the file and without an examination of Smith, that Smith suffered a brachial plexopathy and had "limitations relative to the right upper extremity including decreased reaching above the shoulder, decreased reaching below the shoulder, restriction to light lifting, and occasional pushing and pulling." RSL 0018. With these restrictions Smith was unable to perform any of the material duties of his occupation which, as determined above, required the use of both hands and frequently required reaching and working overhead, pushing, pulling, lifting, carrying, using forceps and manual dexterity. RSL 0111, 0115.

### D. Smith's Work During the Elimination Period

In denying Smith's claim and opposing the relief sought in the Complaint (DE 1), Reliance states that Smith worked during the elimination period and in early 2002. RSL 0012, 0038; DE 14, pp. 10–11; DE 18, p.8; DE 26, ¶¶ 14–17. Reliance bases this argument on three statements in the record. First, Dr. Grossinger in his August 2, 2001 report states that Smith "is employed as an obstetrician/gynecologist at Parkview Hospital." RSL 0176. Next, on March 13, 2002, Dr. Grossinger reports that Smith has "recently started a part time position as an OB/GYN physician in Fort Lauderdale." RSL 0186. Finally, Reliance cites to its own telephone log from May 23, 2002, in which one of Reliance's employees reports that Smith's employer said that Smith had been "working as an OB/GYN in this practice since 1–14–2002. He works 40 hours per week and has since he came to the practice. He also does hospital work." DE 26, ¶ 17; RSL 0045.

This argument is unpersuasive as the evidence lacks relevant details. Notably,

all three sources fail to describe any duties which Smith was performing or any physical abilities Smith demonstrated in performing those duties. Without that information it was impossible for Reliance, and is impossible for the Court, to determine that Smith could perform any one of the material duties of his employment.

Additionally, the statements relied on by Reliance were taken out of context. First, Dr. Grossman's August 2, 2001 statement that Smith was employed at Parkview Hospital reflects Smith's employment situation at the time of his injury. According to Smith's employer, Smith stopped working due to his disability on July 23, 2001 but remained employed until the end of his contract on September 10, 2001. RSL 0110. Tenet also reported to Reliance that Smith's occupation could not be modified to accommodate his disability either temporarily or permanently and that he could not be assisted in doing his occupation. RSL 0111a. Thus, Dr. Grossinger's August 2, 2001 statement does not support the conclusion that Smith was performing the material duties of his occupation at that time.

The other two statements concern Smith's work activities outside the Elimination Period. Dr. Grossinger's statement, on March 13, 2002, that Smith recently started a part-time position as an OB/GYN in Fort Lauderdale, does not address Smith's duties or activities and is followed by Dr. Grossinger's conclusion that Smith "is unfit for employment as a OB/GYN specialist." RSL 0150, 0186. The May 23, 2002 telephone log similarly contains no details about Smith's duties or activities and notes that the call required a followup authorization and questionnaire. RSL 0045. It appears that a fax containing two questions was transmitted to a physician in Fort Lauderdale on June 4, 2002, RSL 0044, but no response is contained in the record.

This evidence, therefore, does not demonstrate that Smith could perform any one of the material duties of his regular occupation and Reliance was wrong to deny Smith's claim based on this record.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. That Plaintiff, Douglas F. Smith does have and recover from Defendant, Reliance Standard Life Insurance Company, the principal sum of $319,200.00 plus prejudgment interest in the amount of $72,149.00 together with interest at the rate of 2.03% from the date of this Order for all of which let execution issue; and

2. *On or before Friday, September 10, 2004,* Plaintiff, Douglas F. Smith shall submit a motion for attorney's fees and costs including appropriate affidavits and exhibits.